IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

| | |
|---|---|
| QUALITY PROPERTIES ASSET MANAGEMENT COMPANY<br>135 South Lasalle St.<br>Chicago, IL 60626<br><br>         Plaintiff<br><br>v.<br><br>TRUMP VIRGINIA ACQUISITIONS, LLC<br>725 Fifth Avenue<br>New York, NY 10027<br><br>Serve: Trump Virginia Acquisitions, LLC<br>       c/o National Registered Agents, Inc.<br>       4001 N. 9th St., Suite 227<br>       Arlington, VA 22203<br>and<br><br>TRUMP VINEYARD ESTATES, LLC<br>725 Fifth Avenue<br>New York, NY 10027<br><br>Serve: Trump Vineyard Estates, LLC<br>       c/o National Registered Agents, Inc.<br>       4001 N. 9th St., Suite 227<br>       Arlington, VA 22203<br><br>         Defendant. | CLERK'S OFFICE U.S. DIST. COURT<br>AT CHARLOTTESVILE, VA<br>FILED<br><br>AUG 26 2011<br><br>JULIA C. DUDLEY, CLERK<br>BY: /s/ <br>    DEPUTY CLERK<br><br>CA: 3:11-CV-00053 |

## COMPLAINT FOR DECLARATORY JUDGMENT

1.     The plaintiff, Quality Properties Asset Management Company ("Quality Properties"), seeks a declaratory judgment that the defendants do not have a right of first refusal to purchase certain property in Albemarle County, Virginia (the "Property"), that is a 9.904-

acre tract of land improved by a substantial dwelling house. The Property is now part of a larger tract of land known as Tax Map 102, Parcel 35 ("TMP 102-35"), and has a street address of 355 Albemarle House Drive, Charlottesville, VA.

### Parties

2. Quality Properties is an Illinois corporation with its principal place of business in Chicago.

3. Defendants Trump Virginia Acquisitions, LLC ("Trump Acquisitions") and Trump Vineyard Estates, LLC ("Trump Vineyard") are Delaware limited liability companies that have their principal place of business in New York. On information and belief, the defendants' members are citizens of New York. The defendants' ultimate owner is Donald J. Trump, a citizen of New York.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. The Court may issue a declaratory judgment pursuant to 28 U.S.C. § 2201.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a)(2) because the real property over which this dispute is concerned is located entirely within this Court's territorial jurisdiction.

### The Quitclaim Deed & Right of First Refusal

6. On December 10, 1984, by deed, attached hereto as **Exhibit 1**, John W. Kluge conveyed numerous tracts of land that he owned personally to an entity known as JWK Properties,

Inc. ("JWK"), an entity that he wholly owned. At the time, John W. Kluge was married to Patricia M. Kluge ("Patricia Kluge" or "Kluge"). By 1990, a large mansion house had been erected in the middle of one of the large tracts of land.

7. In or about 1990, the Kluges divorced. As part of a property settlement, JWK conveyed the Property, including the mansion, to Patricia Kluge. JWK retained all of the land surrounding the mansion house. The conveyance took the form of a Quitclaim Deed, dated June 13, 1990, a copy of which is attached as **Exhibit 2**. The land retained by JWK was then known as Parcel 35A, as shown on Albemarle County Tax Map 102.

8. The Quitclaim Deed prevented the erection of any structures on one portion of Parcel 35A and also granted a non-exclusive easement for ingress and egress over Parcel 35A. The Quitclaim Deed referred to Parcel 35A as the "Burdened Land."

9. The Quitclaim Deed reserved a right of first refusal for the benefit of the Burdened Land. The right of first refusal consists of seven sentences, as follows (with numbering added):

   (1) [Patricia] Kluge hereby COVENANTS and AGREES, that for so long as she is the owner of the Property, she will not accept an offer for the purchase of all or any portion of the Property without first notifying the then current owner of the Burdened Land of such offer.

   (2) In such event, the then current owner of the Burdened Land shall have the right to purchase said property at the same price and upon the same terms and conditions as those offered by such bona fide third party ("Right of First Refusal").

   (3) The then current owner of the Burdened Land shall have fifteen (15) business days in which to exercise this Right of First Refusal after delivery to it of written notice

       by Kluge of the third party's bona fide offer.

(4)    Notice shall be presumed to be delivered three days after notice is mailed by certified mail, postage prepaid, to the mailing address for the then current owner of the Burdened Land as shown in the records of the Real Estate Tax Assessor for Albemarle County, Virginia.

(5)    This Right of First Refusal shall not apply to (i) any conveyance of the Property as security for any indebtedness of Kluge or (ii) deeds of correction, deeds to correct boundary line disputes and similar corrective instruments.

(6)    This Right of First Refusal shall terminate for all time after compliance by Kluge with the provisions hereof and the failure of the then current owner of the Burdened Land to exercise this Right of First Refusal unless the conveyance as contemplated by the bona fide third party offer does not occur, in which event this Right of First Refusal shall remain in full force and effect.

(7)    Upon termination of the Right of First Refusal, as aforesaid, the then current owner of the Burdened Land shall execute a release of said Right of First Refusal which release shall be in recordable form.

### Current Interests in the Property and the Burdened Land

10.    By Deed of Distribution, dated August 31, 2000, JWK subdivided a portion of the Burdened Land and portions of other property into parcels identified as Parcels M, N, U, V, W, X, Y, Z and Residue. A copy of the Deed of Distribution is attached as **Exhibit 3**. The Burdened Land consisted of Parcels N, U, Y and Z. The Deed of Distribution conveyed all of the Burdened Land to John W. Kluge, except Parcel Z

11. John W. Kluge immediately proceeded to dispose of the reacquired land by two deeds, dated August 31, 2000. By Deed of Gift, dated August 31, 2000, he conveyed Parcels N and V to Patricia Kluge, as Trustee of the John W. Kluge, Jr. Trust. A copy of this deed is attached as **Exhibit 4**. This land is now known as Tax Map 102, Parcel 35C ("TMP 102-35C"). It is, was or will be used as a golf course and is presently owned by Trump Acquisitions.

12. By Deed, dated August 31, 2000, John W. Kluge conveyed Parcels U, W, X and Y to House & Garden Company, LLC, which later merged into Kluge Estate Winery and Vineyard, LLC. A copy of this deed is attached as **Exhibit 5**.

13. By Deed of Gift, dated January 8, 2001, JWK conveyed its remaining land to the University of Virginia Real Estate Foundation, which merged into the University of Virginia Foundation. A copy of this deed is attached as **Exhibit 6**. This conveyance included Parcel Z, a part of the Burdened Land.

14. The foregoing deeds divided the ownership of the Burdened Land as follows:

| Parcel | Owner |
| --- | --- |
| N | Patricia Kluge, Trustee of John W. Kluge, Jr. Trust |
| U | House & Garden Company, LLC |
| Y | House & Garden Company, LLC |
| Z | University of Virginia Foundation |

15. By Deed, dated April 30, 2004, the University of Virginia Foundation, successor by merger to the University of Virginia Real Estate Foundations, conveyed a number of properties to Patricia Kluge and her new husband, William Moses. A copy of this deed is

attached as **Exhibit 7**. The conveyance included new Tax Map 103, Parcel 1B ("TMP 103-1B"), a 97.67-acre parcel, which was a combination of Residue, Parcel M and Parcel Z, as shown on the plat attached to the Deed of Distribution.

16. By Deed of Gift, dated December 21, 2004, William Moses and Patricia Kluge conveyed certain land, including TMP 103-1B to Patricia Kluge. A copy of this deed is attached as **Exhibit 8**.

17. By Deed of Bargain and Sale, dated December 21, 2004, Patricia Kluge reconveyed the land she acquired by the Deed of Gift to Kluge Estate Winery and Vineyard, LLC. A copy of this deed is attached as **Exhibit 9**. The deed included TMP 103-1B.

18. By plat recorded on July 8, 2008 and attached to a Private Road Maintenance Agreement, Patricia Kluge and Kluge Estate Winery and Vineyard, LLC, subdivided their respective properties. A copy of the subdivision plat is attached as **Exhibit 10**. By virtue of this subdivision, the Property, Parcel U and part of Parcel Y became part of the new TMP 102-35, containing 97.98 acres. As will be shown, the new TMP 102-35 is now owned by Quality Properties. Another part of Parcel Y became part of the new Tax Map 102, Parcel 35A ("TMP 102-35A), containing 81.10 acres. As will be shown, TMP 102-35A is now owned by Trump Vineyard.

19. By Deed of Distribution, dated July 8, 2005, Kluge Estate Winery and Vineyard, LLC conveyed to Patricia Kluge the parts of the new TMP 102-35 not already owned by her. A copy of this deed is attached as **Exhibit 11**.

20. Following the resubdivision and the July 8, 2005 conveyance to Patricia Kluge, the Burdened Land was owned as follows:

| Former Parcel | Owner | Part of Tax Map No. |
|---|---|---|
| N | Patricia Kluge, Trustee of John W. Kluge, Jr. Trust | Existing TMP 102-35C |
| U | Patricia Kluge | New TMP 102-35 |
| Y (part) | Kluge Estate Winery & Vineyard, LLC | New TMP 102-35A |
| Y (part) | Patricia Kluge | New TMP 102-35 |
| Z | Kluge Estate Winery & Vineyard, LLC | New TMP 103-1B |

21. Ultimately, Kluge Estate Winery & Vineyard, LLC, lost TMP 102-35A, TMP 103-1B and TMP 103-1E at a foreclosure sale. *See* Trustee's Deed, dated February 7, 2011, attached as **Exhibit 12**. The foreclosure purchaser thereafter conveyed these properties to Trump Vineyard. *See* Deed of Bargain and Sale, dated May 9, 2011, attached as **Exhibit 13**.

22. By deed, Stuart Subotnick, acting as trustee of the John W. Kluge, Jr., Trust, conveyed TMP 102-35C to Trump Acquisitions. A copy of this deed is attached as **Exhibit 14**.

## The Current Dispute

23. By Deed of Trust dated November 6, 2007, Patricia Kluge had conveyed TMP 102-35, which includes the Property and part of the Burdened Land, to J. Page Williams, Trustee, to secure a $13.8 million promissory note to Bank of America, N.A. A copy of this Deed of Trust is attached as **Exhibit 15**. When Patricia Kluge executed this Deed of Trust she owned the Property, controlled Kluge Estate Winery and Vineyard, LLC and was the trustee of the John W. Kluge, Jr. Trust.

24. Thereafter, Patricia Kluge defaulted on the loan. In January, 2011, Bank of America appointed a substitute trustee to foreclose its Deed of Trust. By advertisements published on January 21 and 28, 2011, the substitute trustee announced that TMP 102-35 would be

00079646-6

sold at public auction on February 16, 2011.

25. While the foreclosure was pending, Donald J. Trump, or entities affiliated with him, attempted to acquire a right of first refusal to purchase the Property. On January 27, 2011, Stuart Subotnick, asserting he was the trustee of the John W. Kluge, Jr. Trust, granted Trump Acquisitions an option to purchase TMP 102-35C. Simultaneously, Subotnick purported to assign to Trump Acquisitions the right of first refusal appurtenant to the Burdened Land. A copy of the recorded Memorandum of Assignment of Right of First Refusal is attached as **Exhibit 16**.

26. By letter, dated February 2, 2011, Jason Greenblatt, Executive Vice President and General Counsel of the Trump Organization, notified Bank of America's counsel, Jonathan Hauser of Troutman Sanders, LLP, "we have a contract to buy the 200 acres in front of the Property as well as a Right of First Refusal ("ROFR") to purchase the Property. Please inform any and all potential bidders in connection with the foreclosure sale or otherwise that Mr. Trump has a ROFR with respect to the Property." A copy of Mr. Greenblatt's letter of February 2, 2011, is attached as **Exhibit 17**.

27. The substitute trustee under the Deed of Trust conducted a foreclosure sale of the Property on February 16, 2011. Trump bid the sum of $3.6 million for the Property, but Bank of America was the highest bidder for $15.26 million. *See* Trustee's Deed attached as **Exhibit 18**. Bank of America assigned the right to purchase to its affiliate Quality Properties, the grantee of the Trustee's Deed.

28. Quality Properties now owns TMP 102-35, a 97.98-acre parcel that includes both the Property and a portion of the Burdened Land.

29. Quality Properties, Trump Vineyard and Trump Acquisitions presently each own a portion of the property formerly known as the Burdened Land.

30. By letter, dated June 3, 2011, Eric Trump advised Bank of America that Trump Acquisitions claimed the Right of First Refusal continued to exist and would apply to any sale of the property to a third purchaser. A copy of Eric Trump's letter, dated June 3, 2011, is attached as **Exhibit 19**.

31. According to newspaper accounts, Donald J. Trump, has asserted that "Bank of America" cannot expect to sell the Property to anyone but him, although "Maybe someone is stupid enough to buy the house." *See* article, attached hereto as **Exhibit 20**.

32. In response, Quality Properties, by counsel, demanded that Trump Acquisitions sign a release of the Right of First Refusal or that it, or at its option, another Donald J. Trump affiliate, could purchase TMP 102-35 for the foreclosure sale price of $15.26 million. A copy of Quality Properties' letter, without enclosures, is attached hereto as **Exhibit 21**.

33. Trump Acquisitions refused to sign the release or accept Quality Properties' offer to purchase TMP 102-35 on the foreclosure sale terms.

## COUNT ONE:
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201:

34. Paragraphs 1 through 33 are re-alleged and incorporated herein.

35. An actual justiciable controversy exists among Quality Properties, Trump Acquisitions and Trump Vineyard as to whether the right of first refusal exists, and if so, who owns the right and the terms on which the right may be enforced.

36. The right of first refusal terminated by changed circumstances or cessation of purpose.

When the right of first refusal came into being, the Property had been improved by a manor house that was the centerpiece of a large estate owned by JWK. Patricia Kluge got the Property and manor house as a result of a divorce settlement, but John W. Kluge, the owner of JWK, wanted to have an opportunity to bring the Property back into the larger estate if Patricia Kluge decided to sell the Property. The larger estate has since been subdivided and its ownership fragmented. Therefore, the purpose of the right of first refusal can no longer be fulfilled. Based on these changed circumstances and the cessation of purpose of the right of first refusal, it is no longer enforceable.

37. Different parts of the Burdened Land are now owned by Quality Properties, Trump Vineyards and Trump Acquisition. In these circumstances the right of first refusal is either unenforceable or is enforceable only by joint action of all three owners of the separate parts of the Burdened Land. No one who owns only part of the Burdened Land may exercise the right.

38. The right of first refusal terminated because Patricia Kluge, at a time when she owned or controlled all of the Burdened Land, combined the Property with other land to form new TMP 102-35. This act had the effect of vacating or abandoning the right of first refusal.

39. The right of first refusal did not apply to the foreclosure sale because the express terms of the right of first refusal provided that it was inapplicable to any conveyance of the Property as security for an indebtedness. Patricia Kluge's express right to mortgage the Property implies a right on the part of the mortgage lender to convey marketable title to a foreclosure purchaser.

40. If the right of first refusal was not terminated previously, the foreclosure sale terminated

the right of first refusal because the right of first refusal provided it would expire if Patricia Kluge ceased to own the Property, and she ceased to own the Property when the foreclosure sale occurred.

41. If the right of first refusal did not terminate when Patricia Kluge ceased to own the Property, the right of first refusal is void for violation of the Rule against Perpetuities because the right would not necessarily be exercised within the period of the rule.

42. If the right of first refusal did not terminate for reasons previously stated, the terms on which the holder of the right may purchase the Property are the terms on which Bank of America purchased the Property at the foreclosure sale. By letter, dated August 4, 2011, Quality Properties gave Trump Acquisitions, or an affiliated entity, an opportunity to purchase the Property on those same terms, but it did not accept the offer. See Exhibit 21. Trump Acquisitions' failure to purchase the Property for the foreclosure sale price terminated the right of first refusal if it applied to the foreclosure sale.

**WHEREFORE**, Quality Properties respectfully demands judgment against Trump Acquisitions and Trump Vineyard for (a) a declaratory judgment that the right of first refusal no longer exists or, if the right continues to exist, a declaratory judgment identifying the person or persons entitled to exercise the right and the terms upon which the right may be exercised; (b) an award of costs and expenses, including reasonable attorney's fees; (c) a speedy hearing pursuant to Rule 57; and (d) such other relief as the nature of this cause may require.

Respectfully Submitted,

QUALITY PROPERTIES ASSET
MANAGEMENT COMPANY
By Counsel

_/s/ Raighne C. Delaney_

Raighne C. Delaney, VSB #38787
rdelaney@beankinney.com
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, Seventh Floor
Arlington, VA 22201
(703) 525-4000 (phone)
(703) 525-2207 (fax)
Counsel for Plaintiff