# EXHIBIT 17



## THE TRUMP ORGANIZATION

Jason D. Greenblatt
Executive Vice President and
General Counsel
Direct Dial (212) 715-7212
Fax     (212) 980-3821
jgreenblatt@trumporg.com

February 2, 2011

<u>VIA ELECTRONIC MAIL</u> (jonathan.hauser@troutmansanders.com)
Jonathan L. Hauser, Esq.
Troutman Sanders LLP
P.O. Box 61185222 Central Park Drive
Suite 2000
Virginia Beach, Virginia 23462

Re:     Foreclosure Sale of Property in Albemarle County, Virginia known as 355
        Albemarle House Drive, Charlottesville, VA 22902; Albemarle County Tax Map
        parcel 102-35 (the "*Property*")

Dear Mr. Hauser:

Please let this letter serve to represent the fact that we have a contract to buy the 200 acres in the
front of the Property, as well as a Right of First Refusal (a "*ROFR*") to purchase the Property.
Please inform any and all potential bidders in connection with the foreclosure sale or otherwise
that Mr. Trump has a ROFR with respect to the Property. Redacted copies of the documents
relevant to the ROFR are annexed hereto as Attachments I, II and III.

The specific validity of rights of first refusal in the context of an involuntary foreclosure sale
setting (just like a private sale) have been upheld by the Virginia Supreme Court. Feel free to
call me with any questions that you may have or if you wish to discuss this matter.

Sincerely,

Jason Greenblatt

CC:     Donald J. Trump
        Steve Blaine, Esq. (via electronic mail)
        Leslie Goldman, Esq. (via electronic mail)

**EXHIBIT**

tabbies

*17*

Attachment I

Quitclaim Deed

[FOLLOWS THIS COVER PAGE]

*ALBEMARLE HOUSE*

BK 1105 PG 0108

BK 1105 PG 0108

QUITCLAIM DEED                    005110

THIS DEED, made this _13th_ day of June, 1990, by and between JMK PROPERTIES, INC., a Delaware corporation ("JMK Properties") and PATRICIA M. KLUGE, _feme sole_ ("Kluge"), whose address is Route 6, Box 61, Charlottesville, Virginia 22901;

W I T N E S S E T H:

That, for and in consideration of the premises, and in accordance with Virginia Code Section 55.1-4065, JMK Properties does hereby GIVE, GRANT, CONVEY and QUITCLAIM, without warranty, unto the said PATRICIA M. KLUGE, _feme sole_, as her sole and separate equitable estate, free from the control and marital rights of any present or future husband and free from any curtesy rights or inc its curtesy rights of any present or future husband, all of which are hereby expressly excluded, and with the full and complete authority in her to alien, convey, encumber, and otherwise deal with and dispose of the same without necessity of joinder by any present or future husband, all of its right, title and interest in and to that certain tract or parcel of land, with the improvements thereon and appurtenances thereto belonging, situated in the Scottsville Magisterial District, in ████████ ████████ ████████ ████████ acres, more or less, ███████████████████████████████ S Osborne, Inc., ████████████████████████████████ attached hereto and ████████████████████████████████ being a portion of ████████████████████████████████ of John W. Kluge, ██████ dated December 10, 1984, of record in the Clerk's Office

1

of the Circuit Court of Albemarle County in Deed Book 824, page 69, to which reference is hereby made (the "Property").

The foregoing grant shall be together with the following appurtenances:

(1) a non-exclusive easement across the lands of JKK Properties, currently shown as Parcel 36A on Albemarle County Tax Map 102 (the "Burdened Land"), for ingress and egress to and from the Property to State Route 627, the location of the said easement being shown on sheet 1 of the Plat. JKK Properties, for itself and its successors in title to the Burdened Land, COVENANTS and AGREES that it shall, at its sole expense, maintain the roadway located in the said easement in substantially its present condition. In addition, for so long as JKK Properties, or its successors in title to the Burdened Land, shall desire to maintain a gate at the intersection of the said roadway with State Route 627, it COVENANTS and AGREES to maintain the same at its sole expense.

(2) non-exclusive easements for the continued use of the existing wall, septic system, stormwater drainage system and television antenna system located on the Burdened Land, including reasonable _____ together with the right _____ maintenance of such _____ of Kluge and her _____

(3) _____ Burdened Land for the use of the existing system for irrigation of the gardens on the Property, including reasonable access to and from the same,

3

BK 1105 PG 0187

together with the right to maintain, repair, or service the same. Maintenance of such system shall be the sole responsibility of Kluge and her successors in title. Such easement shall include the right to take water from the pond on the Burdened Land to which the said system is now connected; provided, however, that nothing herein shall be construed to require the owner of the Burdened Land to augment or supplement the natural recharge of the said pond. Kluge shall have the right to maintain such pond subject to the prior approval of JMK Properties, which approval shall not be unreasonably withheld.

The foregoing notwithstanding, JMK Properties reserves the right to relocate, reconfigure or otherwise rearrange the easements described above, at its sole expense, upon reasonable notice to Kluge; provided, however, that such relocation, reconfiguration or other rearrangement shall be performed without significant interruption of service to the Property to which such easement is appurtenant.

As a further appurtenance to the Property, JMK Properties, for itself and its successors in title to the Burdened Land, COVENANTS and AGREES that, for so long as Kluge shall remain the owner of the Property, JMK Properties and its successors in title shall [illegible] the house on the Property [illegible] with the privacy of the [illegible]

Kluge [illegible] for so long as she is the [illegible] Property, [illegible] will not accept an offer for the purchase of all or any portion of the Property without first

notifying the then current owner of the Burdened Land of such offer. In such event, the then current owner of the Burdened Land shall have the right to purchase said property at the same price and upon the same terms and conditions as those offered by such bona fide third party ("Right of First Refusal"). The then current owner of the Burdened Land shall have fifteen (15) business days in which to exercise this Right of First Refusal after delivery to it of written notice by Kluge of the third party's bona fide offer. Notice shall be presumed to be delivered three days after notice is mailed by certified mail, postage prepaid, to the mailing address for the then current owner of the Burdened Land as shown in the records of the Real Estate Tax Assessor for Albemarle County, Virginia. This Right of First Refusal shall not apply to (i) any conveyance of the Property as security for any indebtedness of Kluge or (ii) deeds of correction, deeds to correct boundary line disputes and similar corrective instruments. This Right of First Refusal shall terminate for all time after compliance by Kluge with the provisions hereof and the failure by the then current owner of the Burdened Land to exercise this Right of First Refusal unless the conveyance contemplated by the bona fide third party offer does not [illegible] First Refusal shall remain [illegible] [illegible]ation of the Right of First [illegible] current owner of the Burdened [illegible] said Right of First Refusal [illegible] recordable form.

BK 1105 PG 0189

This conveyance is made expressly subject to the easements, conditions, restrictions, reservations and other matters, whether or not contained in duly recorded deeds, plats and other instruments constituting constructive notice in the chain of title to the Property hereby conveyed, it being plainly understood that this conveyance is without any warranty whatsoever.

This conveyance was authorized by unanimous consent of the board of directors of JWK Properties.

WITNESS the following signature and seal:

JWK PROPERTIES, INC.

BY: _Curry A. Roberts_
Managing Director

STATE OF VIRGINIA
CITY/COUNTY OF _Charlottesville_, to-wit:

The foregoing instrument was acknowledged before me this 12th day of _June_, 1990, by Curry A. Roberts, managing director, on behalf of JWK Properties, Inc.

My commission expires: _2/21/92_

_Denise Cae Wack_
Notary Public

8



PLAT SHOWING
BOUNDARY SURVEY OF
ORIGINAL HOUSE & LAND ADDED,
BEING PORTIONS OF
TAX MAP 102 PARCELS 35A & 35,
ALBEMARLE FARM,
ALBEMARLE COUNTY,
VIRGINIA
APRIL 18, 1990          SHEET 1 OF 2.

KIRK & OSBORNE, INC.

PARCEL A
HOUSE TRACT BOUNDARY
12.008 ACRES



PLAT DESCRIBING
30' ACCESS EASEMENT
LEADING FROM ST. RTE. 627 TO MAIN HOUSE TRACT
PASSING THROUGH TAX MAP-102 PARCEL 35A
ALBEMARLE FARMS
ALBEMARLE COUNTY,
VIRGINIA
APRIL 23, 1990

ECKNER & OSBORNE, INC.
ENGINEERS · SURVEYORS · LAND PLANNERS
710 EAST HIGH STREET
CHARLOTTESVILLE, VIRGINIA 22901

SCALE IN FEET
200    400        800

STATE ROUTE 627
(60' R/W)

TO CARTERS BRIDGE
TO ROUTE 627

MAIN HOUSE TRACT

GOLF COURSE TRACT

GOLF COURSE TRACT

NOTE:
THIS IS A REARRANGEMENT OF
AN EXISTING EASEMENT

METES & BOUNDS
ALONG CENTERLINE OF
EXISTING DRIVEWAY ENTRANCE

THIS PLAT IS
APPROVED FOR RECORDATION
Subdivision
ALBEMARLE COUNTY    DATE 6-12-90

SHEET 1 OF 2

Attachment II

Option Agreement

[FOLLOWS THIS COVER PAGE]

## OPTION AGREEMENT

THIS OPTION AGREEMENT (this "**Agreement**") is entered into as of the 27th day of January, 2011, by and between STUART SUBOTNICK, TRUSTEE OF THE JOHN W. KLUGE, JR. TRUST, under agreement dated August 28, 2000, having an address at c/o Metromedia Company, 10 7th Avenue, New York, New York 10019 ("**Seller**") and VIRGINIA ACQUISITIONS LLC, a Delaware limited liability company, having an address at 725 Fifth Avenue, New York, New York 10022 ("**Purchaser**").

## RECITALS

A.     Seller is the owner in fee of that certain real property located in the County of Albemarle, Commonwealth of Virginia, more particularly described on Exhibit A attached hereto (the "**Property**").

B.     Seller desires to grant to Purchaser an option to purchase the Property upon the terms and conditions set forth herein, and Purchaser desires to acquire such option.

NOW THEREFORE, IN CONSIDERATION of the mutual agreements herein set forth, and other valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

## ARTICLE I

## GRANT OF OPTION

1.1     Seller hereby grants to Purchaser the exclusive option to purchase the Property upon all of the terms, covenants and conditions set forth herein (the "**Option**").

1.2     Option Price. Contemporaneously with the execution of this Agreement, and in consideration for Option, Purchaser shall pay to Seller the sum of ███████████████ ████████████ Dollars ($ ████████) (the "**Option Price**").

1.3     Term and Manner of Exercise. The Option shall be exercisable by Purchaser at any time during the period commencing on the date hereof and terminating on ███████████(the "**Option Period**") by Purchaser delivering to Seller written notice of Purchaser's election to exercise the Option in the manner set forth in Section 4.9 hereof prior to the expiration of the Option Period, which notice shall set forth the estimated date that Purchaser has elected for the closing (the "**Closing**") of the sale and purchase of the Property to take place (the actual date on which the Closing takes place being referred to herein as the "**Closing Date**"). Purchaser shall have the right to extend the Closing Date from time to time by notice to Seller provided that the Closing Date shall not be extended beyond the expiration of the Option Period, unless extended to allow Seller to cure title exceptions or Events of Seller's Default (as defined in Exhibit C) in accordance with the provisions of Exhibit C.

1.4     Memorandum of Option. Concurrently with the execution and delivery of this Agreement, Seller and Purchaser shall execute, acknowledge and deliver a Memorandum of Option ("**Memorandum**") in the form attached to this Agreement as Exhibit B. Purchaser has

1

the right to record the Memorandum in the Clerk's Office of the Circuit Court of the County of Albemarle County, Virginia. In the event that Purchaser does not exercise the Option during the Option Period, promptly following the expiration of the Option Period, Purchaser shall deliver to Seller a duly acknowledged quitclaim deed of all of its interests in the Property under this Agreement.

    1.5    <u>Remedies of Seller.</u> In the event Purchaser purchases the property located adjacent to the Property and designated as Lot 10200-00-00-03500 on the Tax Map of Albemarle County, Virginia, and as more particularly described on <u>Exhibit E</u> annexed hereto (the "House Parcel"), but fails to exercise the Option during the Option Period, Seller shall be entitled, as its sole remedy to retain the Option Price as consideration and in full satisfaction of all of Purchaser's obligations hereunder, and Seller shall have no further recourse against Purchaser. If Purchaser does not purchase the House Parcel during the Option Period or if, prior to the expiration of the Option Period, the House Parcel is sold or otherwise transferred by foreclosure, deed in lieu of foreclosure, or otherwise, to a third party that is not an affiliated with Purchaser, Seller shall, promptly after notice from Purchaser, refund to Purchaser the Option Price.

    1.6    <u>Inspections.</u> From and after the date of this Agreement, Purchaser shall have the right at Purchaser's sole cost and expense to enter onto the Property (either through its employees or designated agents and representatives) at reasonable times and in a reasonable manner after giving reasonable notice to Seller for the purpose of making such inspections as Purchaser deems necessary in connection with this Agreement; provided that Purchaser shall, if requested by Seller, be accompanied by Seller's employees in connection with any inspection of the Property, and shall not make any physical alteration to the Property without first securing the written consent of Seller. Seller shall not unreasonably withhold or delay its consent to such right to enter by Purchaser.

## ARTICLE II

## TERMS OF PURCHASE

    2.1    In the event that Purchaser exercises the Option within the Option Period in accordance with <u>Section 1.3</u> hereof, Seller agrees to sell and Purchaser agrees to buy the Property and Seller and Purchaser agree to execute and deliver a contract for such purchase and sale of the Property (the "Contract"), which Contract shall contain the terms and conditions set forth on <u>Exhibit C</u> attached hereto and such other reasonable and customary terms and conditions to which the parties, acting in good faith, may agree.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

    3.1    As an inducement to Seller to enter into this Agreement, Purchaser represents, warrants and covenants that it is a limited liability company duly organized, validly existing and in good standing under the laws of its state of formation; that it has the power and authority to enter into this Agreement, and to consummate the transaction herein contemplated; and that the execution and delivery hereof and the performance by Purchaser of its obligations hereunder will

not violate or constitute an event of default under the terms or provisions of any agreement, document or instrument to which Purchaser is a party or by which Purchaser is bound.

3.2    As an inducement to Purchaser to enter into this Agreement, Seller represents, warrants and covenants as of the date hereof as follows:

(a)    Seller is the sole trustee of The John W. Kluge, Jr., Trust, under agreement dated August 28, 2000, duly appointed in accordance with and under the laws of the Commonwealth of Virginia; and Seller has the requisite sole power and authority to (i) enter into this Agreement, and (ii) sell the Property. The execution and delivery hereof and the performance by Seller of its obligations hereunder will not violate or constitute an event of default under the terms and provisions of any agreement, document or instrument to which Seller is a party or by which Seller is bound, including any and all trust agreements, instructions and commands relating to The John W. Kluge, Jr., Trust, under agreement dated August 28, 2000;

(b)    This Agreement and the documents contemplated hereby are the valid and binding obligations of Seller;

(c)    Seller has good and marketable fee simple title to the Property, free and clear of all liens, property taxes, encumbrances, and restrictions, except for the Permitted Exceptions and has the full right, power and authority to sell, convey and transfer the Property in accordance with the terms of this Agreement;

(d)    There are no leases, subleases, licenses, tenancy or occupancy agreements, service contracts, union contracts or other agreements to which Seller or the Property is bound, whether written or unwritten, covering or affecting the Property which will affect the Property on the Closing Date, other than the Permitted Exceptions;

(e)    Seller has sole and exclusive possession of the Property and will be able to deliver possession of the Property free of all leases on the Closing Date;

(f)    The existing uses of the Property are in full compliance with all applicable zoning laws (and applicable variances) and any other local, municipal, regional, state or federal requirements and the improvements on the Property comply with all applicable building, safety, health, zoning, environmental, subdivision and other laws, ordinances and regulations;

(g)    There are no pending condemnation, eminent domain or similar proceedings affecting any part of the Property and no such proceeding shall be pending on the Closing Date. To the best of the Seller's knowledge, no such condemnation, eminent domain or other proceeds are threatened or planned;

(h)    As of the date hereof, there is no action, litigation, proceeding or investigation pending or threatened, affecting Seller, title to the Property or the use, maintenance or operation of the Property;

(i)     The Property is not subject to any commitment, obligation, or agreement, including but not limited to, any right of first refusal or option to purchase, granted to a third party, which would or could prevent Seller from completing the sale of the Property as contemplated by this Agreement;

(j)     Seller has not (i) made a general assignment for the benefit of creditors; (ii) filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by Seller's creditors; or (iii) suffered the appointment of a receiver to take possession of all or substantially all of the assets of The John W. Kluge, Jr., Trust, under agreement dated August 28, 2000 (the "Trust");

(k)     Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code, or under any comparable state statutes which are applicable to this transaction;

(l)     All costs and expenses incurred by those engaged by Seller in connection with construction or improvements to the Property, up to and including the date hereof, have been paid, and Seller shall pay all such cost and expenses incurred prior to the Closing Date;

(m)     Seller is not delinquent in any payment of any taxes, principal and interest on assessment districts' bonds or other encumbrances or obligations with respect to the Property;

(n)     Seller has received no notices from governmental authorities pertaining to violations of law or governmental regulations with respect to the Property with which Seller has not fully complied;

(o)     Seller has not made any commitments to any governmental authority relating to the Property which would impose any obligations upon Purchaser to make any contributions of money or land or to install or maintain any improvements;

(p)     (i) Neither Seller nor any tenant, occupant or user of the Property, or any other person has (A) engaged in or permitted any operations or activities upon, or any use or occupancy of, the Property or any portion thereof for the purpose of, or in any way involving, the handling, manufacture, treatment, storage, use, generation, release, discharge, refining, dumping or disposal of any Hazardous Materials on, under, in or about the Property or (B) transported any Hazardous Materials to, from or across the Property; (ii) no Hazardous Materials are presently constructed, deposited, stored or otherwise located on, under, in or about the Property; (iii) no Hazardous Materials have migrated from the Mortgaged Property upon or beneath other properties and (iv) to its knowledge, no Hazardous Materials have migrated or threaten to migrate from other properties upon, about or beneath the Property.  For purposes of this Agreement, "Hazardous Materials" shall mean each and every element, compound, chemical mixture, contaminant, pollutant, material, waste or other substance which is defined, determined or identified as hazardous or toxic under any Environmental Law, including, without limitation, (1) "hazardous substances" as defined in the Comprehensive

4

Environmental Response, Compensation and Liability Act of 1980, the Superfund Amendment and Reauthorization Act of 1986, or Title III of the Superfund Amendment and Reauthorization Act, each as amended, and regulations promulgated thereunder; excluding, however, common maintenance and cleaning products regularly found at properties with a standard of operation and maintenance comparable to the Property; (2) "hazardous waste" and "regulated substances" as defined in the Resource Conservation and Recovery Act of 1976, as amended, and regulations promulgated thereunder; (3) "hazardous materials" as defined in the Hazardous Materials Transportation Act, as amended, and regulations promulgated thereunder; and (4) "chemical substance or mixture" as defined in the Toxic Substances Control Act, as amended, and regulations promulgated thereunder, and "Environmental Law" shall mean any federal, state or local statute, regulation or ordinance or any judicial or administrative decree or decision, whether now existing or hereinafter enacted, promulgated or issued, with respect to the protection of human health, or the environment, or any Hazardous Materials, drinking water, groundwater, wetlands, landfills, open dumps, storage tanks, underground storage tanks, solid waste, waste water, storm water run-off, waste emissions or wells, including, without limitation, each of the following statutes, and regulations promulgated thereunder, and amendments and successors to such statutes and regulations, as may be enacted and promulgated from time to time: (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified in scattered sections of 26 U.S.C.; 33 U.S.C.; 42 U.S.C. and 42 U.S.C. §9601 et seq.); (ii) the Resource Conservation and Recovery Act of 1976 (42 U.S.C. §6901 et seq.); (iii) the Hazardous Materials Transportation Act (49 U.S.C. §1801 et seq.); (iv) the Toxic Substances Control Act (15 U.S.C. §2061 et seq.); (v) the Clean Water Act (33 U.S.C. §1251 et seq.); (vi) the Clean Air Act (42 U.S.C. §7401 et seq.); (vii) the Safe Drinking Water Act (21 U.S.C. §349; 42 U.S.C. §201 and §300f et seq.); (viii) the National Environmental Policy Act of 1969 (42 U.S.C. §4321); (ix) the Superfund Amendment and Reauthorization Act of 1986 (codified in scattered sections of 10 U.S.C., 29 U.S.C., 33 U.S.C. and 42 U.S.C.); and (x) Title III of the Superfund Amendment and Reauthorization Act (40 U.S.C. §1101 et seq.);.

(q)     The Property has not been designated as a landmark or granted landmark status, is not located in a landmark district and no pending landmark designation proceeding affect the Property;

(r)     The Property is not affected by any exemption or abatement of taxes;

(s)     There are no contracts with respect to or affecting the Property, recorded or unrecorded, which will survive the Closing;

## ARTICLE IV

### MISCELLANEOUS

4.1     Entire Agreement.   This Agreement contains the entire understanding of the parties hereto with respect to the subject matter hereof, and no prior or contemporaneous written

5

or oral agreement or understanding pertaining to any such matter shall be effective for any purpose.

    4.2    <u>Time of Essence</u>. Time is of the essence of this Agreement.

    4.3    <u>Attorneys' Fees</u>. Should any action be brought arising out of this Agreement, including without limitation any action for declaratory or injunctive relief, the prevailing party shall be entitled to reasonable attorneys' fees and costs and expenses of investigation incurred in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 or the Bankruptcy Code or any successor statutes, and any judgment or decree rendered in any such actions or proceeding shall include an award thereof.

    4.4    <u>Binding Effect</u>. The provisions of this Agreement shall inure to the benefit of and be binding upon Seller and Purchaser and their respective successors and permitted assigns.

    4.5    <u>No Waiver</u>. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

    4.6    <u>Further Acts</u>. Each party shall, at the request of the other, execute, acknowledge (if appropriate) and deliver whatever additional documents, and do such other acts, as may be reasonably required in order to accomplish the intent and purposes of this Agreement.

    4.7    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall together constitute but one and the same agreement.

    4.8    <u>Amendments</u>. This Agreement may not be changed or modified except by an instrument in writing executed by the parties hereto.

    4.9    <u>Notices</u>. All communications, notices and demands of any kind which either party may be required or may desire to give to or serve upon the other hereunder shall be given in writing and shall be effective for all purposes if (a) hand delivered or (b) sent by expedited prepaid nationally recognized overnight courier service, either commercial or United States Postal Service, with proof of attempted delivery, addressed as follows

| To Seller: | Stuart Subotnick, Trustee |
|---|---|
| | The John W. Kluge, Jr. Trust |
| | c/o Metromedia Company |
| | 10 7th Avenue |
| | New York, New York 10019 |

| To Purchaser: | Virginia Acquisitions LLC |
|---|---|
| | 725 Fifth Avenue, 26th Floor |
| | New York, New York 10022 |
| | Attention: Allen Weisselberg |

Virginia Acquisitions LLC
725 Fifth Avenue, 26ᵗʰ Floor
New York, New York 10022
Attention: Jason Greenblatt, Esq.

All notices, elections, requests and demands under this Agreement shall be effective and deemed received upon the earliest of (i) the actual receipt of the same by personal delivery or otherwise, or (ii) one (1) Business Day after being deposited with a nationally recognized overnight courier service as required above. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given as herein required shall be deemed to be receipt of the notice, election, request, or demand sent. Either party may change its address by giving the other party written notice of its new address as herein provided. Counsel for any party to this Agreement may give any notices, elections, requests and demands under this Agreement.

4.10   Headings. Any headings in this Agreement are solely for the convenience of the parties and are not part of this Agreement.

4.11   Governing Law. This Agreement and the transaction herein contemplated shall be construed in accordance with and governed by the laws of the Commonwealth of Virginia.

4.12   Brokers. Seller and Purchaser each hereby represent and warrant to the other that it has not dealt with any broker or finder or any other person who might be entitled to a fee in connection with this Agreement or the purchase and sale of the Property and that no fee or commission is due to any broker, finder or other person in connection with this Agreement or the sale contemplated thereby. Seller and Purchaser each hereby indemnify the other and agree to hold the other harmless from and against any and all claims, demands, liabilities, losses, judgments, costs and expenses (including, without limitation, reasonable attorneys' fees) arising directly or indirectly out of any claim for a fee or commission due to any broker or finder arising out of facts which contravene the warranties herein stated. These representations, warranties and agreements shall survive the termination of this Agreement and the Contract.

4.13   Assignment.

(a)   Seller may not assign this Agreement or any of its rights hereunder for any purpose whatsoever or transfer the Property or any interest therein, or any direct or indirect interest in Seller, without, in each case, the written consent of Purchaser and any purported assignment shall be absolutely void and of no force or effect.

(b)   Purchaser shall have the right to assign this Agreement and any of its rights hereunder to any entity in which Donald J Trump has an interest without the written consent of Seller.

4.14   Confidentiality. Unless otherwise agreed to in writing by each party hereto or as required by law, subpoena or other legal process, each party hereto agrees (a) to keep all information about this transaction confidential and not to disclose or reveal any such information to any persons or entities other than each party's lawyers, accountants and lenders (who shall be caused by said party to observe the terms and conditions set forth herein as though each such person was bound hereby), and (b) not to use such information for any purpose other than in

7

connection with this transaction. Without prejudice to the rights and remedies otherwise available, each party hereto shall be entitled to equitable relief by way of injunction if any other party hereto breaches or threatens to breach any of the provisions of this section. The provisions of this Section 4.14 shall survive the termination of this Agreement and the Contract.

IN WITNESS WHEREOF, Seller and Purchaser have executed this Agreement on the day and year first above written.

"PURCHASER"

VIRGINIA ACQUISITIONS LLC,
a Delaware limited liability company

By: _____

"SELLER"

STUART SUBOTNICK, TRUSTEE, JOHN W. KLUGE JR. TRUST, under agreement dated August 28, 2000

By: _____

Attachment III

Assignment of Right of First Refusal

[FOLLOWS THIS COVER PAGE]

## ASSIGNMENT OF RIGHT OF FIRST REFUSAL

THIS ASSIGNMENT OF RIGHT OF FIRST REFUSAL (this "**Agreement**") is entered into as of the **27**th day of January, 2011, by and between STUART SUBOTNICK, TRUSTEE OF THE JOHN W. KLUGE, JR. TRUST, under agreement dated August 28, 2000, having an address at c/o Metromedia Company, 10 7th Avenue, New York, New York 10019 ("**Seller**") and VIRGINIA ACQUISITIONS LLC, a Delaware limited liability company, having an address at 725 Fifth Avenue, New York, New York 10022 ("**Purchaser**"),

### RECITALS

A.     Seller is the owner in fee of that certain real property located in the County of Albemarle, Commonwealth of Virginia, more particularly described on Exhibit A attached hereto (the "**Property**").

B.     Seller desires to assign to Purchaser and Purchaser desires to acquire from Seller, the ROFR upon the terms and conditions set forth herein.

NOW THEREFORE, IN CONSIDERATION of the mutual agreements herein set forth, and other valuable consideration, receipt of which is hereby acknowledged, the parties hereby agree as follows:

### ARTICLE I

### ASSIGNMENT

1.1     <u>Assignment of Right of First Refusal</u>. Seller hereby assigns to Purchaser all of Seller's right, title and interest in, to and under that certain right of first refusal (the "**ROFR**") created under that certain Quitclaim Deed by and between JWK Properties, Inc. and Patricia M. Kluge dated as of June 13th, 1990; Recorded in the Clerk's Office of the Circuit Court of the County of Albemarle County, Virginia in Deed Book 1105, Pages 0185-0191 (the "**ROFR Agreement**") and held by Seller as current owner of the Burdened Property (as defined in the ROFR Agreement) to purchase an approximately 9.904 acre portion, as more particularly described in Exhibit B annexed hereto and made a part hereof (the "**ROFR Property**"), of that certain real property designated as Lot [10200-00-00-03500] on the Tax Map of Albemarle County, Virginia, and as more particularly described on Exhibit C annexed hereto. This assignment is a present assignment and shall be effective immediately upon execution of this Agreement. As holder of the ROFR, Purchaser has the current right (for itself, or on behalf of the Seller) to exercise all rights under the ROFR Agreement and to receive all notices thereunder. Seller hereby makes, constitutes and appoints Purchaser as its true and lawful agent and attorney-in-fact for the limited purposes exercising rights under the ROFR Agreement. Seller shall cooperate with Purchaser and execute and deliver any and all instruments and other documents that Purchaser may reasonably request to further evidence or effectuate this assignment.

1.2     <u>Assignment Consideration</u>. Contemporaneously with the execution of this Agreement, and in consideration for the assignment of the ROFR to Purchaser, Purchaser shall pay to Seller the sum of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (the "**Assignment Consideration**"). In the event that Purchaser does not exercise the ROFR

1

prior to ~~████████~~, the ROFR shall automatically revert to Seller upon Seller's refund of the Assignment Consideration to Purchaser.

    1.3    <u>Memorandum of Assignment</u>. Concurrently with the execution and delivery of this Agreement, Seller and Purchaser shall execute, acknowledge and deliver a Memorandum of Assignment ("**Memorandum**") in the form attached to this Agreement as <u>Exhibit D</u>. Purchaser has the right to record the Memorandum in the Clerk's Office of the Circuit Court of the County of Albemarle County, Virginia.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES

    2.1    As an inducement to Seller to enter into this Agreement, Purchaser represents, warrants and covenants that it is a limited liability company duly organized, validly existing and in good standing under the laws of its state of formation; that it has the power and authority to enter into this Agreement, and to consummate the transaction herein contemplated; and that the execution and delivery hereof and the performance by Purchaser of its obligations hereunder will not violate or constitute an event of default under the terms or provisions of any agreement, document or instrument to which Purchaser is a party or by which Purchaser is bound.

    2.2    As an inducement to Purchaser to enter into this Agreement, Seller represents, warrants and covenants as of the date hereof as follows:

    (a)    Seller is the sole trustee of The John W. Kluge, Jr., Trust, under agreement dated August 28, 2000, duly appointed in accordance with and under the laws of the Commonwealth of Virginia; and Seller has the requisite sole power and authority to (i) enter into this Agreement, and (ii) grant the Assignment. The execution and delivery hereof and the performance by Seller of its obligations hereunder will not violate or constitute an event of default under the terms and provisions of any agreement, document or instrument to which Seller is a party or by which Seller is bound, including any and all trust agreements, instructions and commands relating to The John W. Kluge, Jr., Trust, under agreement dated August 28, 2000;

    (b)    This Agreement and the documents contemplated hereby are the valid and binding obligations of Seller;

    (c)    Seller is the owner and holder of, and has good title to, the ROFR, free and clear of all liens, property taxes, encumbrances, and restrictions and has the full right, power and authority to assign, sell, convey and transfer the ROFR in accordance with the terms of this Agreement;

    (d)    The ROFR is in full force and effect and Seller has not assigned, sold, conveyed, transferred, pledged or granted a security interest in the ROFR or any interest therein;.

    (e)    As of the date hereof, there is no action, litigation, proceeding or investigation pending or threatened, affecting Seller, title to the Property or the ROFR;

(f) The ROFR is not subject to any commitment, obligation, or agreement, including but not limited to, any right of first refusal or option to purchase, granted to a third party, which would or could prevent Seller from assigning the ROFR to Purchaser as contemplated by this Agreement;

(g) Seller has good and marketable fee simple title to the Property, free and clear of all liens, property taxes, encumbrances, and restrictions;

(h) Seller has not (i) made a general assignment for the benefit of creditors; (ii) filed any voluntary petition in bankruptcy or suffered the filing of an involuntary petition by Seller's creditors; or (iii) suffered the appointment of a receiver to take possession of all or substantially all of the assets of The John W. Kluge, Jr., Trust, under agreement dated August 28, 2000 (the "Trust"); and

(i) Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code, or under any comparable state statutes which are applicable to this transaction;

## ARTICLE III

## MISCELLANEOUS

3.1  **Entire Agreement.** This Agreement contains the entire understanding of the parties hereto with respect to the subject matter hereof, and no prior or contemporaneous written or oral agreement or understanding pertaining to any such matter shall be effective for any purpose.

3.2  **Time of Essence.** Time is of the essence of this Agreement.

3.3  **Attorneys' Fees.** Should any action be brought arising out of this Agreement, including without limitation any action for declaratory or injunctive relief, the prevailing party shall be entitled to reasonable attorneys' fees and costs and expenses of investigation incurred in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 or the Bankruptcy Code or any successor statutes, and any judgment or decree rendered in any such actions or proceeding shall include an award thereof.

3.4  **Binding Effect.** The provisions of this Agreement shall inure to the benefit of and be binding upon Seller and Purchaser and their respective successors and permitted assigns.

3.5  **No Waiver.** No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

3.6  **Further Acts.** Each party shall, at the request of the other, execute, acknowledge (if appropriate) and deliver whatever additional documents, and do such other acts, as may be reasonably required in order to accomplish the intent and purposes of this Agreement.

3.7    Counterparts.  This Agreement may be executed in counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall together constitute but one and the same agreement.

3.8    Amendments.  This Agreement may not be changed or modified except by an instrument in writing executed by the parties hereto.

3.9    Notices.  All communications, notices and demands of any kind which either party may be required or may desire to give to or serve upon the other hereunder shall be given in writing and shall be effective for all purposes if (a) hand delivered or (b) sent by expedited prepaid nationally recognized overnight courier service, either commercial or United States Postal Service, with proof of attempted delivery, addressed as follows

| | |
|---|---|
| To Seller: | Stuart Subotnick, Trustee of<br>The John W. Kluge, Jr. Trust<br>c/o Metromedia Company<br>10 7th Avenue<br>New York, New York 10019 |
| To Purchaser: | Virginia Acquisitions LLC<br>725 Fifth Avenue, 26th Floor<br>New York, New York 10022<br>Attention: Allen Weisselberg |
| With a copy to: | Virginia Acquisitions LLC<br>725 Fifth Avenue, 26th Floor<br>New York, New York 10022<br>Attention: Jason Greenblatt, Esq. |

All notices, elections, requests and demands under this Agreement shall be effective and deemed received upon the earliest of (i) the actual receipt of the same by personal delivery or otherwise, or (ii) one (1) Business Day after being deposited with a nationally recognized overnight courier service as required above.  Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given as herein required shall be deemed to be receipt of the notice, election, request, or demand sent. Either party may change its address by giving the other party written notice of its new address as herein provided.  Counsel for any party to this Agreement may give any notices, elections, requests and demands under this Agreement.

3.10    Headings.  Any headings in this Agreement are solely for the convenience of the parties and are not part of this Agreement.

3.11    Governing Law.  This Agreement and the transaction herein contemplated shall be construed in accordance with and governed by the laws of the Commonwealth of Virginia.

3.12    Brokers.  Seller and Purchaser each hereby represent and warrant to the other that it has not dealt with any broker or finder or any other person who might be entitled to a fee in connection with this Agreement or the assignment of the ROFR and that no fee or commission is due to any broker, finder or other person in connection with this Agreement or the sale

4

contemplated thereby. Seller and Purchaser each hereby indemnify the other and agree to hold the other harmless from and against any and all claims, demands, liabilities, losses, judgments, costs and expenses (including, without limitation, reasonable attorneys' fees) arising directly or indirectly out of any claim for a fee or commission due to any broker or finder arising out of facts which contravene the warranties herein stated. These representations, warranties and agreements shall survive the termination of this Agreement.

3.13    Assignment.

(a)    Seller may not assign this Agreement or any of its rights hereunder for any purpose whatsoever or transfer the Property or any interest therein, or any direct or indirect interest in Seller, without, in each case, the written consent of Purchaser and any purported assignment shall be absolutely void and of no force or effect.

(b)    Purchaser shall have the right to assign this Agreement and any of its rights hereunder to any entity in which Donald J Trump has an interest without the written consent of Seller.

3.14    Confidentiality. Unless otherwise agreed to in writing by each party hereto or as required by law, subpoena or other legal process, each party hereto agrees (a) to keep all information about this transaction confidential and not to disclose or reveal any such information to any persons or entities other than each party's lawyers, accountants and lenders (who shall be caused by said party to observe the terms and conditions set forth herein as though each such person was bound hereby), and (b) not to use such information for any purpose other than in connection with this transaction. Without prejudice to the rights and remedies otherwise available, each party hereto shall be entitled to equitable relief by way of injunction if any other party hereto breaches or threatens to breach any of the provisions of this section. The provisions of this Section 3.14 shall survive the termination of this Agreement.

5

IN WITNESS WHEREOF, Seller and Purchaser have executed this Agreement on the day and year first above written.

"PURCHASER"

VIRGINIA ACQUISITIONS LLC,
a Delaware limited liability company

By: _____

"SELLER"

STUART SUBOTNICK, TRUSTEE, JOHN W.
KLUGE JR. TRUST, under agreement dated
August 28, 2000

By: _____

PATRICIA M. KLUGE, as owner of the
ROFR Property, hereby acknowledges the
assignment of the ROFR to Purchaser

_____
PATRICIA M. KLUGE

IN WITNESS WHEREOF, Seller and Purchaser have executed this Agreement on the day and year first above written.

"PURCHASER"

VIRGINIA ACQUISITIONS LLC,
a Delaware limited liability company

By: _____

"SELLER"

STUART SUBOTNICK, TRUSTEE, JOHN W. KLUGE JR. TRUST, under agreement dated August 28, 2000

By: _____

PATRICIA M. KLUGE, as owner of the ROFR Property, hereby acknowledges the assignment of the ROFR to Purchaser

_____
PATRICIA M. KLUGE

6