IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

| | | |
|---|---|---|
| QUALITY PROPERTIES ASSET MANAGEMENT COMPANY, | : | CASE NO. 3:11-CV-00053 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRUMP VIRGINIA ACQUISITIONS LLC, | : | |
| And | : | |
| TRUMP VINEYARD ESTATES LLC, | : | |
| Defendants | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

The sole object of Plaintiff Quality Properties Asset Management Company ("QP")'s Complaint is a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, that the Defendants' right of first refusal ("the ROFR") relating to certain property in Albemarle County ("the Property") "no longer exists or, if the right continues to exist, a declaratory judgment identifying the person or persons entitled to exercise the right and the terms upon which the right may be exercised . . . . " Complaint at 11 (prayer for relief).

"'Federal courts are courts of limited jurisdiction and the "threshold requirement in every federal case is jurisdiction."'" Lee v. Citimortgage, Inc., 739 F. Supp. 2d 940, 942 (E.D. Va. 2010) (quoting Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n, 893 F.2d 968, 969 (8th Cir. 1990) (quoting Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987)). "Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties." Brickwood Contractors, Inc. v. Datanet Engineering, Inc., 369 F.3d 385, 390 (4th Cir. 2004).

1

The federal Declaratory Judgment Act does not confer jurisdiction on the federal courts. A district court must therefore have an independent basis of subject matter jurisdiction in a declaratory judgment action. See Aetna Cas. & Surety Co. v. Quarles, 92 F.2d 321, 323-24 (4th Cir. 1937). In the present case, QP asserts only the existence of diversity jurisdiction under 28 U.S.C. §1332. Although diversity of citizenship exists between QP and the Defendants, QP cannot satisfy the requirement of 28 U.S.C. §1332 that the amount in controversy exceed $75,000.00 exclusive of interest and costs because the amount in controversy in this action is either non-existent or entirely speculative and incapable of being quantified.

## ARGUMENT

"A district court is a court of limited jurisdiction 'and the fair presumption is . . . that a cause is without its jurisdiction till the contrary appears'". Fairfax Countywide Citizens Ass'n v. County of Fairfax, 571 F.2d 1299, 1303 (4th Cir.), cert. denied, 439 U.S. 1047 (1978) (quoting Turner v. President Directors and Company of the Bank of North America, 4 U.S. (4 Dall.) 8, 10 (1790). "The policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction." Thomson v. Gaskill, 315 U.S. 442, 446 (1942). Accordingly, "[t]he burden of establishing diversity jurisdiction rests with the party seeking to litigate in federal court . . . . " Gonzalez v. Fairgate Props. Co., N.V., 241 F. Supp. 2d 512, 517 (D. Md. 2002) (citing Gwyn v. Wal-Mart Stores, Inc., 955 F. Supp. 44, 45 (M.D. N.C. 1996). The plaintiff's burden must be satisfied by "competent proof." Thomson, 315 U.S. at 446.

In a declaratory judgment action "the amount in controversy is the pecuniary result to either party which that judgment would produce . . . . " Gov. Employees Ins.

2

Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964). "[A] claim not measurable in 'dollars and cents' fails to meet the jurisdictional test of amount in controversy." McGaw v. Farrow, 472 F.2d 952, 954 (4th Cir. 1972).

This Court has previously recognized that the monetary consequences of declaratory relief may prove too speculative to support the amount in controversy requirement for diversity jurisdiction. See Mathews v. PHH Corp., 2010 U.S. Dist. LEXIS 101487 (W.D. Va. Sept. 24, 2010). In Mathews, plaintiffs had filed an action in state court seeking a declaration that their mortgage lender had breached its contract with them by failing even to attempt a face-to-face meeting with them prior to instituting a foreclosure action on their property. Id. at *17. The defendant removed the action to federal court where, as the party asserting jurisdiction, it had the burden of establishing the amount in controversy to support diversity jurisdiction. Id. at *13-14. This Court found that because the subject of the litigation was the contractual right to a meeting with the defendant prior to foreclosure, "the pecuniary value and costs to both parties, by any calculation, are 'too speculative and immeasurable to satisfy the amount in controversy requirement.'" Id. at *19 (quoting Vargo v. Del. Title Loans, Inc., 2010 U.S. Dist. LEXIS 76166 at *2 (D. Md. July 27, 2010)). The Court in Lee, 739 F. Supp. 2d 940, addressed the identical issue raised in Mathews and reached the same conclusion.

Vargo, cited by this Court in Mathews, involved a plaintiff's claim for a declaratory judgment seeking to invalidate her loan agreement's arbitration and class action waiver provisions. Vargo, 2010 U.S. Dist. LEXIS at *1-2. The defendant attempted to satisfy the amount in controversy requirement by arguing that if plaintiff received the relief she requested, defendant would inevitably be exposed to class-action suits that would cost it

3

in excess of $75,000.00. The court concluded that such purported costs to the defendant were too speculative because there was "no guarantee" that Vargo or anyone else would actually exercise the right to file a class-action suit and, even if such a right were exercised, the court could not 'say with any certainty whether that suit would satisfy the amount in controversy requirement." Id. at *4. The Court therefore found that no diversity jurisdiction existed.

Similarly, in Gonzalez, 241 F. Supp. 2d 512, a plaintiff shareholder filed suit in federal court based on diversity jurisdiction seeking a declaration that the corporate defendant had improperly refused to allow her to exercise her right to vote on a proposed sale of real property by the corporation to the purchasing defendants. Id. at 516. When the defendants challenged subject matter jurisdiction, Gonzalez could provide no evidence of any pecuniary gain to her if she were granted the relief she sought. Likewise, she could not demonstrate that if she were granted her right to vote, exercised that right, and thereby stopped the real estate sale, the seller corporation or the proposed buyers would suffer any pecuniary loss, since in that scenario the buyer would retain the sale price of $1,100,000.00 and the seller would retain the real property, the value of which was presumptively equal to the sale price. Id. at 518.

The analysis in Mathews, Lee, Vargos, and Gonzalez demonstrates that there is no way to assign any definite, or even likely, pecuniary value to the ROFR in the present case. The ROFR merely grants the defendants the right to purchase the Property on the same terms and conditions as any bona fide third party buyer to whom the owner of the Property may otherwise determine to sell. There is no way to decide, in the abstract, what value the right might have to defendants in any particular scenario.

4

Likewise, QP cannot demonstrate that honoring the ROFR would cause plaintiff to suffer any pecuniary loss. Such loss would appear to be highly unlikely, if not impossible, since the ROFR would only allow Defendants to match another offer, not undercut any such offer. Therefore, regardless of the identity of the purchaser, the economic outcome for QP would be identical because the sale price would be the same. With respect to any future sale of the Property, if any, there is no way to determine when or if the ROFR might be exercised, and therefore, there is, likewise, no way to determine its actual effects on QP.

QP's alternative request for relief seeks a determination of who may exercise the ROFR and on what terms. The pecuniary result of a determination of who may exercise the ROFR can no more be calculated than the pecuniary result of a determination as to the ROFR's existence. When the inquiry shifts from the existence of the ROFR to the interpretation of the ROFR's terms and conditions, the speculation inherent in calculating the pecuniary result to the parties only multiplies with the number of potential scenarios under which the specific terms and conditions of the ROFR may come into play.

**CONCLUSION**

Because the pecuniary consequences of the relief QP seeks are either non-existent or entirely speculative, the value of the subject of this litigation cannot be measured in dollars and cents. Accordingly, QP cannot satisfy the amount in controversy requirement for diversity jurisdiction and this action must be dismissed.

5

TRUMP VIRGINIA ACQUISITIONS LLC
TRUMP VINEYARD ESTATES LLC
By Counsel

/s/ David D. Hopper
David D. Hopper, Esquire (VSB # 30038)
Cook, Heyward, Lee, Hopper & Feehan, P.C.
4551 Cox Road, Suite 210
P.O. Box 3059
Glen Allen, Virginia 23058-3059
Telephone: (804) 747-4500
Facsimile:   (804) 762-9608
e-mail: ddhopper@chlhf.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Raighne C. Delaney, Esquire
    rdelaney@beankinney.com
    Bean, Kinney & Korman, P.C.
    2300 Wilson Boulevard, Seventh Floor
    Arlington, VA  22201

    /s/ David D. Hopper_____
    David D. Hopper, Esquire (VSB #30038)
    Cook, Heyward, Lee, Hopper & Feehan, P.C.
    4551 Cox Road, Suite 210
    P.O. Box 3059
    Glen Allen, Virginia 23058-3059
    Telephone: (804) 747-4500
    Facsimile:   (804) 762-9608
    e-mail: ddhopper@chlhf.com