IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| QUALITY PROPERTIES ASSET MANAGEMENT COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>TRUMP VIRGINIA ACQUISITIONS, LLC, ET AL.,<br><br>*Defendants*. | CIVIL ACTION NO. 3:11-CV-00053<br><br><br>MEMORANDUM OPINION<br><br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

Plaintiff, Quality Properties Asset Management Company ("Quality Properties," or "QP"), filed this action seeking "a declaratory judgment that the defendants do not have a right of first refusal to purchase certain property" because "the right of first refusal no longer exists."[1]  "[I]f the right [of first refusal] continues to exist," Plaintiff requests an alternative "declaratory judgment identifying the person or persons entitled to exercise the right and the terms upon

---

[1] Although it is not explicitly pleaded as an action to "quiet title," it is clear that the complaint seeks to quiet title to the property by removing a cloud on it, namely a claimed right of first refusal.  A quiet title action is no more than an equitable proceeding to remove a cloud from a title where the instrument or other proceeding constituting the cloud may be used injuriously to affect the plaintiff's title.  15 Michie's Jurisprudence, "Quieting Title," §§ 1 and 2, p. 322.  A cloud on title is an outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently on its face, has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question.  *Day v. Vaughn & Ustilton*, 193 Va. 168, 172 (1951).

This court's authority to quiet title is independent of statute and comes from general equitable principles and practice.  15 Michie's Jurisprudence, "Quieting Title," §§ 1 and 2, p. 322.  The only modern elements to the claim are that 1) the plaintiff has valid legal and equitable title, and 2) the defendant asserts some claim that constitutes a cloud on the plaintiff's title.  *Id*., § 11.  Here, the Complaint alleges that Plaintiff has legal and equitable title to the Property and that Defendants assert a claim that clouds Plaintiff's title.  Plaintiff's main request for relief is that the Court remove the cloud on its title by declaring that the right of first refusal has terminated.

which the right may be exercised.[2]

Defendants have moved to dismiss, asserting that the court lacks subject matter jurisdiction – specifically, that the Plaintiff cannot meet its burden to show that the value of the right of first refusal ("ROFR," or "the right") exceeds $75,000 because the value of the right is speculative. However, Plaintiff alleges that the property is worth $15.26 million, and adds that the claimed ROFR clouds the entirety of the property, rendering the entire property unmarketable. Under the facts alleged in this case, the amount in controversy is the value of the whole of the real estate to which the claim extends, and I will deny the motion to dismiss.

## I.

The following summary represents the facts as alleged by Plaintiff.

Quality Properties owns real property known as Tax Map 102, Parcel 35 in Albemarle County, Virginia. The property (hereinafter "the Property") consists of 97.98 acres with a large mansion home located on it. Quality Properties acquired the Property for the price of $15.26 million through a foreclosure sale on February 16, 2011. At the sale, Donald J. Trump, or an entity acting on his behalf, was the second highest bidder for the Property, with a bid of $3.6 million.

Defendants, Trump Virginia Acquisitions, LLC ("Trump Acquisitions") and Trump Vineyard Estates, LLC ("Trump Vineyard"), are entities owned by Mr. Trump that, either separately or collectively, claim ownership of a ROFR regarding the Property. While the right

---

[2] In other words, Plaintiff seeks, in the alternative, a declaration as to Defendants' rights to eject it from the property. An action for ejectment is a common law remedy, but it is now controlled by statute. Va. Code §§ 8.01-131 through 165; *Sheffield v. Dep't of Highways*, 240 Va. 332, 335 (1990). An action for ejectment determines the title and right of possession for real property. *Id*. The judgment entered for a successful plaintiff is that he recovers possession of the property, according to the terms set by the court. *Id*.

arguably extends only to the Property's original 9 acres, Trump claims the right to purchase the entire Property.

The alleged right of first refusal stems from a June 1990 Quitclaim Deed from JWK, Inc. to Patricia Kluge.  By that deed, JWK, Inc. conveyed to Ms. Kluge a 9.9 acre parcel, then known as Tax Map 102, Parcel 35.  The Quitclaim Deed retained a right of first refusal in the 9.9 acre parcel, vested in the owner of the "Burdened Land" as defined by the Quitclaim Deed.

Over time, the Burdened Land was subdivided, and different persons or entities came to own different portions of the Burdened Land.  Eventually, Ms. Kluge came to own or control all of the Burdened Land, and she then subdivided it again, increasing the acreage of the former Tax Map 102, Parcel 35 from 9.9 acres to its present size of 97.98 acres.  Thereafter, Ms. Kluge borrowed money from Bank of America, securing the loan with a lien on the Property.  When she defaulted on the loan, Bank of America foreclosed.

At the foreclosure sale, Mr. Trump, or entities associated with him, asserted that they owned the right of first refusal, and bid $3.6 million for the Property.  Bank of America was the highest bidder for the Property, with a bid of $15.26 million, and it assigned its right to purchase the Property to its affiliate, Quality Properties.

Plaintiff contends that, at present, Trump Acquisitions, Trump Vineyard, and Quality Properties collectively own the land that was formerly the "Burdened Land."

Mr. Trump has asserted publicly that, due to the right of first refusal, Quality Properties cannot sell the mansion to anyone but him, stating "maybe someone is stupid enough to buy the house."  To resolve the dispute, Quality Properties demanded that Mr. Trump either sign a certificate of release of the ROFR or purchase the Property for the foreclosure sale price of $15.26 million, but Trump refused to sign the release or purchase the Property for the

foreclosure sale price.

QP now seeks a declaration that the right of first refusal has terminated or, in the alternative, for the Court to declare the persons who own the right of first refusal and the terms on which that person or persons may exercise the right of first refusal.

## II.

Defendants have moved for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b0(1) of the Federal Rules of Civil Procedure.  There are two different ways by which one may present a motion to dismiss for lack of subject matter jurisdiction: 1) by contending that a complaint fails to allege facts upon which the court may base jurisdiction, or 2) by contending "that the jurisdictional allegations of the complaint were not true," thus launching an evidentiary challenge.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  The difference is critical because a challenge for the former reason affords the plaintiff with "the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id*.  A challenge for the latter reason may require the plaintiff to produce evidence by affidavit or testimony, whether by deposition or live.  *Id*.  Here, Defendants argue that the amount in controversy is determined by the value of the alleged right of first refusal, which they contend is too speculative; in other words, they contend that the "complaint simply fails to allege facts upon which subject matter can be based."  *Id*.  Therefore, under *Adams*, the standard for deciding Rule 12(b)(6) motions applies, and the court must "take the facts in the light most favorable to the plaintiff." *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citation omitted).

According to the complaint, Ms. Kluge placed a $13.8 million deed of trust on the Property on November 6, 2007.  On February 16, 2011, Mr. Trump (or an entity acting on his

behalf) bid the sum of $3.6 million for the Property.  Bank of America was the high bidder, for the sum of $15.26 million, which it assigned to its affiliate, Quality Properties.  The Trump entities have asserted that the ROFR applies to the entire Property.  Taking these facts in the light most favorable to Quality Properties, the Property's value, for the purpose of determining the amount in controversy, is $15.26 million, which exceeds the federal courts' jurisdictional requirement of an amount in controversy of at least $75,000.[3]

It is probably inconsequential that Trump's claimed right of first refusal, if it is still in existence, might extend only to the original 9.9 acres of the 97.98 acre property.  The original parcel was made a part of the Property by Patricia Kluge, when she owned or controlled all of the Burdened Land.  Any ruling regarding the original parcel will necessarily affect the entire Property because there is now only one estate, the entire Property.  Second, the mansion house itself sits on the original parcel, and Quality Properties is entitled, at this point, to an inference that the bulk of the Property's value derives from the mansion home, as they allege.  If one were to attempt to value the original parcel as if it were a separate parcel of land, the original parcel constitutes about 10% of the Property.  If one were to ignore the existence of the mansion house on the former 9.9 acre parcel and calculate values based on acreage, 10% of the $15.26 million foreclosure sale price is $1.526 million, and 10% of Trump's $3.6 million bid constitutes $360,000.  Either calculation exceeds $75,000.  No matter how one decides to measure the Property's value, when the court gives Quality Properties the benefit of all reasonable inferences, the Property is worth at least $75,000.

In support of its response to Defendants' motion to dismiss, QP has attached the affidavit

---

[3] Indeed, Mr. Trump bid $3.6 million for the Property, and there is no dispute that the Property is worth at least $75,000.

of Michael Kramer as Exhibit 1 thereto.  Mr. Kramer is the Quality Properties officer responsible

for the Property.  According to his testimony, Albemarle County has currently assessed the

Property for taxation purposes, as of February 11, 2011, as having a land value of $1.776 million

and an improvements value of $15.34 million, with a total value of $17.116 million.

### III.

When considering a challenge to the factual basis for subject matter jurisdiction, "the

burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg &*

*Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at

1219).  In deciding whether jurisdiction exists, a court "may consider evidence outside the

pleadings without converting the proceeding into one for summary judgment." *Id*. (citing

*Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).  Upon

consideration of a Rule 12(b)(1) motion, "[t]he moving party should prevail only if the material

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

law." *Id*. (citing *Trentacosta*, 813 F.2d at 1558).

While federal courts are courts of limited jurisdiction, *Owen Equip. & Erection Co. v.*

*Kroger*, 437 U.S. 365, 374 (1978), Congress has statutorily provided them with the power to

hear cases between diverse parties as long as two requirements are met: first, the opposing

parties must be diverse, meaning that they must be citizens of different states, and second, the

amount-in-controversy must exceed $75,000.  *See* 28 U.S.C. § 1332(a).  If these two

requirements are met, a district court has the power to hear the case.

In interpreting the amount-in-controversy requirement, the Supreme Court of the United

States has pronounced that, "[i]n actions seeking declaratory or injunctive relief, it is well

established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In 1938, the United States Court of Appeals for the Fourth Circuit ruled that, "in suits to quiet title or in actions for ejectment, 'the amount in controversy is the value of the whole of the real estate to which the claim extends and not the value of the defendant's claim.'" *Peterson v. Sucro*, 93 F.2d 878, 882 (4th Cir. 1938) (citations omitted)[4]; *see also Ruthfield v. PNC Bank National Association*, Civil Action No. 5:11-cv-45, 2011 WL 3298420 at *3 (W.D.N.C. Aug. 1, 2011)

_____

[4] Other courts have cited and adopted the *Peterson* rule. *See Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1048 (11th Cir. 1993); *Groves v. Rogers*, 547 F.2d 898, 900 (5th Cir. 1977); *Nikora v. Mayer*, 122 F. Supp. 587, 588 (D.Ct. 1954).

Defendants cite an opinion of mine that is not applicable to a quiet title action or an action for ejectment, and which does not purport to overrule or in any way circumscribe *Peterson*. *See Mathews v. PHH Corp*, Civil Action No. 3:09-cv-83, 2010 WL 3766538 at *4, *6 (W.D. Va. Sept. 24, 2010) (dismissing for lack of subject matter jurisdiction because "plaintiffs' claim that defendant violated a federal regulation that was incorporated as a condition of the parties' state law-governed contract is insufficient to confer federal question jurisdiction over this matter," and "[a]s the object of the litigation is simply the right to have a face-to-face meeting prior to foreclosure proceedings, such a right is not readily measurable in monetary terms" to meet the jurisdictional test of amount in controversy). Indeed, *Matthews* took specific exception that the case before it was "not a suit to quiet title." *Id*. at *6. Defendants cite other cases that are also inapposite here. *See Vargo v. Del. Title Loans, Inc.*, Civ. Action No. 1:10-cv-1251, 2010 WL 2998788, at *2 (D.Md. July 27, 2010) (value of eliminating waiver provision in contract is too speculative); and *Gonzalez v. Fairgate Props. Co. N.C.*, 241 F. Supp. 2d 512, 517 (D. Md. 2002) (object of suit was shareholder's right to vote).

In *Peterson*, the defendants asserted that they had an ownership interest in certain real property by virtue of certain deeds signed by third parties. The plaintiff believed this assertion was a cloud on his title and he filed suit to remove the cloud on his title. The defendants asserted that, when the value of the outstanding mortgage was taken into account, the plaintiff's interest in the property did not exceed the court's jurisdictional limit. The district court denied the motion and the defendants answered by responding that they owned the land in question. The case proceeded as an action for ejectment, under North Carolina law. On appeal, the Fourth Circuit held that, in cases to quiet title or actions for ejectment, the proper value for the amount of controversy is the value of the real estate, as a whole.

Here, the *Peterson* ruling applies equally to both Quality Properties' main request for relief, which is to quiet its title, and to its alternative request for relief, regarding the Trump entities' rights to eject Quality Properties from the Property in exchange for the foreclosure sale price. The Supreme Court of Virginia has held that a right of first refusal will apply to a foreclosure sale transaction. *See Fairfax County Redevelopment & Hous. Auth. v. Riekse*, 281 Va. 441 (2011) (Fairfax County's remedy to enforce its right of first refusal was to bring an action for ejectment against the foreclosure sale purchaser, but because Fairfax County had not sued the purchaser at all, the case was dismissed); *Cities Service Oil Company v. Estes*, 208 Va. 44 (1967) (the holder of the right of first refusal was entitled to first refusal over the objection of the highest and last bidder at the foreclosure sale).

("[i]n an action seeking to quiet title, 'the amount in controversy is the value of the whole of the real estate to which the claim extends'") (quoting *Peterson*).

Even disregarding *Peterson*, the object of this action seeking declaratory relief is to clear Quality Properties' right to market the Property for sale, with marketable title, to a third party. Under Virginia law, a "marketable title" is, *inter alia*, "one which is free from liens or encumbrances," "is dependent for its validity upon no doubtful questions," and "will not expose the purchaser to the hazard of litigation." *Madbeth, Inc. v. Weade*, 204 Va. 199, 202 (1963). The present controversy over the ROFR subjects any potential purchaser to the hazard of litigation with Defendants (or, as Plaintiff contends, with Mr. Trump).

Quality Properties contends that it cannot presently convey marketable title to a third party, and the economic worth of the object in controversy is the value of the entire Property, which unsettled claims regarding the ROFR render unmarketable. Thus, for the amount in controversy purposes, the value of the entire Property is the proper measurement, even if one were inclined to disregard *Peterson*.

## IV.

For the stated reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

An appropriate order accompanies this memorandum opinion.

Entered this _____10th_____ day of November, 2011.

Norman K. Moon

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE