**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)**

QUALITY PROPERTIES ASSET
MANAGEMENT COMPANY,   Case No. 3:11-CV-00053

    Plaintiff,

v.

TRUMP VIRGINIA ACQUISITIONS, LLC
and
TRUMP VINEYARD ESTATES, LLC,

    Defendants and
    Counterclaim Plaintiffs,

v.

QUALITY PROPERTIES ASSET MANAGEMENT COMPANY

and

BANK OF AMERICA, N.A.
Serve: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, Virginia 23060-6802
(County of Henrico)

and

BEALE, DAVIDSON, ETHERINGTON & MORRIS, P.C., Substitute Trustee,
Serve: John S. Morris, III
701 East Franklin Street, Suite 1200
Richmond, Virginia 23219-0000
(City of Richmond),

    Counterclaim Defendants.

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COME NOW Trump Virginia Acquisitions LLC ("TVA") and Trump Vineyard Estates LLC ("TVE"), by counsel, and for their Answer, Affirmative Defenses, and Counterclaim to the Complaint for Declaratory Judgment state as follows:

## Answer

1. Paragraph 1 of the Complaint does not state any factual matter or legal conclusions which require a response. To the extent that a response is required, the allegations of paragraph 1 are denied.

2. TVA and TVE are without sufficient information to admit or deny the allegations in paragraph 2 of the Complaint, and on that basis, deny and call for strict proof thereof.

3. The allegations of paragraph 3 of the Complaint are admitted.

4. The allegations of paragraph 4 state a legal conclusion, which is at odds with Plaintiff's contention that this is an action in *quia timet.* TVA and TVE accordingly deny the allegations of paragraph 4 of the Complaint.

5. For response to the allegations of paragraph 5 of the Complaint, TVA and TVE admit that the real property in issue is located in Albemarle County, Virginia. The remainder of the allegations of paragraph 5 state legal conclusions which TVA and TVE do not admit nor deny.

6. In response to paragraph 6 of the Complaint, TVA and TVE admit that Exhibit 1 to the Complaint is the true copy of an instrument recorded in the Clerk's office of the Circuit Court of Albemarle County in Deed Book 824, page 63, the terms of which are a matter of public record and speak for themselves. TVA and TVE admit on information and belief, that by 1990 one or more of the parts of the land covered by

Exhibit 1 had been improved. TVA and TVE are without sufficient information to admit the allegations of paragraph 6 other than as set forth above and on that basis deny those allegations and call for strict proof thereof.

7. In response to paragraph 7 of the Complaint, TVA and TVE admit that Exhibit 2 to the Complaint appears to be a true and correct copy of an instrument recorded in the Clerk's Office of the Circuit Court of Albemarle County at Deed Book 1105, page 185, the terms of which are a matter of public record and speak for themselves. TVA and TVE are without sufficient information to admit the remaining allegations in paragraph 7 and therefore deny the allegations and call for strict proof thereof.

8. In response to the allegations of paragraphs 8 and 9 of the Complaint, TVA and TVE state that Exhibit 2 speaks for itself and deny that paragraphs 8 and 9 fully state or correctly characterize the contents of Exhibit 2.

9. In response to allegations of paragraphs 10-22, of the Complaint, TVA and TVE admit that Exhibit 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 appear to be true and correct copies of documents recorded in the Clerk's Office of Albemarle County. TVA and TVE deny that said Exhibits constitute all of the documents in the chain of title relevant to this dispute. TVA and TVE admit that as of the date of suit, they are the owners of roughly 94% of the property referred to in Exhibit 2 as the "Burdened Land".

10. In response to the allegations of paragraph 23 of the Complaint, TVA and TVE admit that Exhibit 15 appears to be a true copy of the document recorded in the Clerk's office in the Circuit Court of Albemarle County, Virginia at Deed Book 3516, page 24, and that the document reflects that it is a refinancing of an existing Deed of Trust "with the same lender". The state of title to what Plaintiff refers to as "the

3

Property" is a matter of public record. TVA and TVE are without sufficient information to admit the remaining allegations of paragraph 23 and on that basis deny the allegations and call for strict proof thereof.

11. TVA and TVE are without sufficient information to admit the first sentence of paragraph 24 of the Complaint and therefore deny that allegation. TVA and TVE admit advertisements of a foreclosure sale were published in January 2011, affirmatively allege that the contents of such notices speak for themselves, and deny that the allegations of paragraph 24 fully and accurately set forth the contents of the advertisements. The allegations of the second sentence of paragraph 24 are admitted.

12. For response to the allegations of paragraph 25, of the Complaint, TVA and TVE state that Exhibit 16 is a true and complete copy of an instrument recorded at Deed Book 3999 at pages 66-76 in the Clerk's office of the Circuit Court of Albemarle County, Virginia, and that the terms of that instrument speak for themselves. TVA and TVE further affirmatively allege that TVA acquired, by virtue of Exhibit 16 and an option agreement executed simultaneously therewith, the Right of First Refusal reserved in Exhibit 2, and so advised Plaintiff's parent, Counterclaim Defendant Bank of America, N.A. All allegations inconsistent with the foregoing are denied.

13. In response to the allegations of paragraph 26, of the Complaint, TVA and TVE admit that Exhibit 17 is a true and complete copy of a letter dated February 2, 2011, signed by Jason Greenblat which appears to include all of the attachments transmitted with that letter. TVA and TVE admit that Exhibit 13 contains the quoted language set forth in paragraph 26.

14. The allegations of the first sentence of paragraph 27 are admitted by TVA and TVE. The allegations of the second sentence of paragraph 27 are denied. TVA

and TVE admit that Exhibit 18 is a true copy of a document recorded in the Clerk's office in the Circuit Court of Albemarle County at Deed Book 4008, pages 437-441. TVA and TVE admit on information and belief that Quality Properties Asset Management Company is a wholly-owned "affiliate" of Bank of America, N.A. TVA and TVE are without sufficient information to admit or deny any allegations regarding the terms of any agreement between Bank of America, N.A. and Quality Properties Asset Management Company. All allegations in paragraph 27 not expressly admitted are denied.

15. The allegations of paragraph 28 of the Complaint are denied.

16. For response to the allegations in paragraph 29, TVA and TVE admit and affirmatively allege that between them they currently own 94% of the property referred to in Exhibit 2 as "the Burdened Land". All other allegations in paragraph 29 are denied.

17. In response to the allegations of paragraph 30 to the Complaint, TVA and TVE state that Exhibit 19 appears to be a true copy of a letter dated June 3, 2011 from Eric Trump to Bank of America. That letter speaks for itself and TVA and TVE deny all allegations regarding, and characterizations, of its contents at variance therewith.

18. TVA and TVE do not know the source of Exhibit 20, and on that basis, the allegations of paragraph 31 of the Complaint are denied.

19. TVA and TVE admit that Exhibit 21 appears to be a copy of a letter sent to TVA, dated August 4, 2011, but state that the allegations of paragraph 32 of the Complaint do not fully set forth the contents of Exhibit 21. TVA and TVE deny that the contents of Exhibit 21 fully or correctly set forth either the facts or the law.

20. For response to the allegations of paragraph 33 of the Complaint, TVA and TVE admit that TVA has neither released nor waived its Right of First Refusal, and

refused to accede to the attempts by Bank of America, N.A. and its wholly-owned affiliate to force TVA either to pay Bank of America's price or release the Right of First Refusal.

21. In response to paragraph 34 of the Complaint, TVA and TVE incorporate as though fully set forth herein their responses to paragraphs 1-33 of the Complaint.

22. The allegations of paragraph 35 of the Complaint are denied insofar as paragraph 35 misstates the nature of the legal issues determinative of the rights between the parties.

23. The allegations of paragraph 36 of the Complaint are denied in that the express intent of the Right of First Refusal, as appears on the face of Exhibit 2, and as apparent from all of the circumstances, would be defeated if Bank of America and Plaintiff were allowed to get away with ignoring the Right of First Refusal and the court declined specifically to enforce the Right of First Refusal.

23. For response to the allegations in paragraph 37 of the Complaint, TVA and TVE admit that they currently own 94% of the property referred to as "the Burdened Land" in Exhibit 2. The remaining allegations of paragraph 37 are denied.

24. The allegations of paragraph 38 of the Complaint are denied. TVA and TVE further aver that no merger extinguishing the Right of First Refusal with respect to property owned by TVA and TVE has occurred as a matter of law.

25. The allegations of paragraph 39 of the Complaint are denied.

26. The allegations of paragraph 40 of the Complaint are denied as irreconcilable with the holdings of the Virginia Supreme Court.

27. The allegations of paragraph 41 of the Complaint are denied in that they contain a statement that is contradicted as a matter of law by the case law and statutes

of the Commonwealth of Virginia.

28. The allegations of paragraph 42 of the Complaint are denied on the grounds that they are irreconcilable with rulings of the Virginia Supreme Court and the Right of First Refusal contained in Exhibit 2.

29. All factual allegations of the Complaint not expressly admitted herein are denied.

### Affirmative Defenses

30. Although the Court has discretion to exercise jurisdiction over this matter based on its ruling pertaining to TVA and TVEs' Motion to Dismiss, as to which ruling TVA and TVE preserve all objections, the Court should decline to exercise that jurisdiction in this case because the nature of the issues and controlling legal authority render the case uniquely more suitable for resolution by the Virginia Courts, the filing in this court is procedural fencing by QP, and there is no federal issue or policy implicated by any aspect of this case.

31. The Complaint fails to state a cause of action upon which relief can be granted because the deed to Quality Properties Asset Management Company purportedly conveying the property which is subject to the Right of First Refusal is void.

32. As more fully set forth in Defendant's Counterclaim, QP is equitably estopped by its own conduct and by the conduct of its parent, to assert that the Right of First Refusal set forth in Exhibit 2 has been extinguished by their actions.

33. As more fully set forth in Defendant's Counterclaim, QP is barred by its unclean hands from seeking relief in equity in the nature of *quia timet.*

WHEREFORE, TVA and TVE request that the Complaint be dismissed against

them and for such other and further relief as the Court shall deem appropriate.

## **COUNTERCLAIM**

### **Introduction and Nature of Relief Sought**

1. In January 2011, Trump Virginia Acquisitions LLC ("TVA") obtained a right of first refusal ("the Right of First Refusal") to acquire a house known as Albemarle House, and the roughly 10 acres of land in Albemarle County on which it is located (the "Main House Tract"). Counterclaim Defendants are and have been obligated to honor TVA's rights, but have flatly refused to do so. The object of this counterclaim is to enlist equity's aid in enforcing the Right of First Refusal. Counterclaim Defendants have attempted to put the Main House Tract out of Counterclaim Plaintiffs' reach through an improperly conducted foreclosure sale at which Bank of America, N.A. ("BoA") bid in four parcels, one of which was the Main House Tract, with a credit bid, and in violation of TVA's rights, had title conveyed to its affiliate, QP. Since that conveyance, and in their continued attempt to deprive Plaintiffs of their rights, BoA and QP have attempted to force Plaintiffs to purchase, at an exorbitant price, additional property not subject to the Right of First Refusal, as a condition of exercising the Right of First Refusal to acquire the Main House Tract. Counterclaim Plaintiffs come to equity asking the court to void the trustee's deed executed by Counterclaim Defendant Beale, Davidson, Etherington & Morris, P.C. ("Beale") as substitute trustee under a deed of trust for the benefit of BoA, conveying the Main House Tract to QP, and thereafter to order that Beale convey the Main House Tract to Counterclaim Plaintiffs. In the alternative, Counterclaim Plaintiffs seek to prevent BoA or QP from offering, selling or conveying the Main House Tract except to Counterclaim Plaintiffs, or to a bona fide third party

whose offer Counterclaim Plaintiffs have not elected to meet, in a manner that ensures Counterclaim Plaintiffs receive the benefit of the Right of First Refusal.

### Jurisdiction

2. Trump Virginia Acquisitions, LLC and Trump Vineyard Estates, LLC are Delaware limited liability companies whose members are citizens of the State of New York or Delaware. BoA is a national banking association, whose main office, as set forth in its articles of association is in North Carolina. QP is an Illinois Corporation with its principal place of business in Illinois. Beale is a Virginia Corporation with its principal place of business in the Commonwealth of Virginia. Thus, the parties are fully diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, since Counterclaim Plaintiffs seek to void the deed to the Main House Tract executed in favor of QP. Subject matter jurisdiction therefore exists pursuant to 28 U.S.C. § 1332(a)(1). To the extent that subject matter jurisdiction exists over QP's Complaint, to which ruling TVA and TVE preserve all objections, subject matter jurisdiction over this compulsory counterclaim also exists pursuant to 28 U.S.C. §1367.

### Facts

3. The Main House Tract is a 9.904 acre tract on which there is currently located an approximately 23,000 square foot house known as Albemarle House which JWK Properties ("JWK") conveyed to Patricia M. Kluge in June 1990. At that time, the Main House Tract was landlocked and wholly surrounded by land owned by JWK which was then shown as parcel 35A on Albemarle County Tax Map 102 (the "Surrounding Land").

4. The deed conveying the Main House Tract to Patricia Kluge granted her certain easements (including an access easement) and negative covenants binding the

Surrounding Land. The deed also reserved a right of first refusal in JWK and its successors, exercisable by the "then current owner" of the Surrounding Land at such time as the obligations of the Right of First Refusal were triggered.

5. Specifically, the deed provided that Patricia Kluge covenanted and agreed

> that for so long as she is the owner of the Property [the Main House Tract], she will not accept an offer for the purchase of all or any portion of the Property without first notifying the then-current owner of the Burdened Land of such offer. In such event, the then current owner of the Burdened Land shall have the right to purchase said Property at the same price and upon the same terms and conditions as those offered by such bona fide third party ('Right of First Refusal'). The then current owner of the Burdened Land shall have fifteen (15) business days in which to exercise the Right of First Refusal after delivery to it of written notice by Kluge of the third party's bona fide offer.

(What was referred to in the deed as the "Burdened Land" – because it was burdened with easements and other obligations for the benefit of the Main House Tract – is the same property referred to herein as the Surrounding Land.)

6. The Right of First Refusal could only be terminated "after compliance by [Patricia] Kluge with the provisions hereof and the failure by the then current owner of the Burdened Land to exercise this Right of First Refusal unless the conveyance contemplated by the bona fide third party offer does not occur, in which event, the Right of First Refusal shall remain in full force and effect."

7. Between 1990 and 2007 the Surrounding Land was subdivided and portions of it conveyed to various entities, but Patricia Kluge remained at all times the owner of the Main House Tract.

8. In 2004, Patricia Kluge entered into a Ten Million Dollar ($10,000,000.00) loan with Fleet National Bank ("the Fleet loan"). To secure the loan Patricia Kluge pledged the Main House Tract, and Kluge Estate Winery & Vineyard, LLC pledged an

additional 165.13 acres. In 2004, BoA became successor by merger to Fleet National Bank.

9. In 2007, BoA refinanced and restructured the Fleet loan, increasing the loan amount to Thirteen Million Eight Hundred Thousand Dollars ($13,800,000.00), and releasing roughly 80 acres of the collateral pledged by Kluge Estate Winery and Vineyard, LLC to secure the Fleet loan (the balance of the 165.13 acres having been conveyed to Patricia Kluge in 2005). Patricia Kluge executed a new Deed of Trust for the benefit of BoA (the "BoA Deed of Trust"), which covered four separate tracts, totaling in the aggregate approximately 97.98 acres (the "BoA Collateral"), of which, 9.904 acres was the Main House Tract.

10. BoA had full knowledge of the Right of First Refusal for the Main House Tract when it restructured and refinanced the Fleet Loan: BoA assumed the risk that exercise of the Right of First Refusal at a foreclosure sale under the BoA Deed of Trust might result in inability to sell the BoA Collateral as a whole, or prevent BoA from bidding in the Collateral as a whole by credit bid, and yet BoA still chose to substantially increase its loan exposure and decrease its collateral.

11. In January 2011, Beale was substituted as trustee under the BoA Deed of Trust, and published notice that the BoA Collateral would be sold at a foreclosure sale to be conducted February 16, 2011.

12. On January 27, 2011, TVA acquired an Option to purchase approximately 205 acres of the Surrounding Land lying between Route 627 and the front of Albemarle House, an option which TVA subsequently exercised. Simultaneously with the Option, TVA acquired the right to exercise the Right of First Refusal by taking an Assignment from the owner of the optioned land, assigning the right to TVA, and making TVA

attorney in fact for the then current owner of the optioned land.

13. TVA immediately advised BoA in writing of its right to exercise the Right of First Refusal at the upcoming foreclosure sale, and provided copies of the Assignment by which it had acquired the right (as well as a copy of the Option). TVA followed up with additional correspondence, emails, and other communications to the same effect leading up to the February 16 sale. Patricia Kluge, through her representatives, also communicated with Beale and BoA regarding the Right of First Refusal and TVA's claim to the right to exercise it at the foreclosure. TVA repeatedly requested that BoA put all potential bidders on notice of the existence of the Right of First Refusal.

14. Without disputing TVA's right to exercise the Right of First Refusal, BoA brushed off TVA's notifications, denied that BoA was obligated to do anything to alert bona fide third party bidders of the existence of the Right of First Refusal, and moved forward as though the right had never existed.

15. At the foreclosure, Beale offered the Main House Tract only as part of a bundle with the other three parcels comprising the BoA Collateral, and did not solicit separate offers for the Main House Tract.

16. BoA made a credit bid that not only included what was owed under the BoA Deed of Trust, but also included amounts owed to BoA under a second deed of trust with a face value of Four Million Dollars ($4,000,000), and Beale accepted the bid without tendering TVA any opportunity to purchase the Main House Tract. BoA then caused Beale to transfer the property to BoA's affiliate, QP. On information and belief, the amount of BoA's bid was substantially in excess of the fair market value of the BoA Collateral.

17. Although not obligated to do so to preserve its rights, TVA went to the

foreclosure and not only bid, but in an attempt to ensure that TVA would not be deprived of its right to purchase the property it was legally entitled to purchase under the Right of First Refusal, submitted a higher bid than any of the bids submitted by other bona fide third parties who attended the sale. TVA's subsequent offer to BoA/QP of the full amount of its bid in return for conveyance of the Main House Tract has been rejected out of hand.

18. Since the conveyance to QP, BoA has responded to Plaintiffs' repeated demands that BoA honor the Right of First Refusal, by demanding that Plaintiffs either purchase the entirety of the BoA Collateral for the full amount of BoA's credit bid, or release the Right of First Refusal. In the meantime, QP is continuing to actively market the BoA Collateral, including the Main House Tract, without mentioning the Right of First Refusal.

19. Since the foreclosure sale, BoA and QP have attempted to apply additional pressure on Plaintiffs by neglecting the BoA Collateral and allowing vines on the BoA Collateral to become diseased and infested, knowing that such neglect and conditions pose direct threat of harm to Plaintiffs' nearby vines and property. Repeated requests to address the problem and even offers by Plaintiffs to arrange to treat the vines to avert any damage to Plaintiffs' vines and property, have been refused.

20. As of today, TVA and TVE are the owners of roughly 94% of the Surrounding Land as it existed in 1990, (the other 6% or so is part of the BoA Collateral).

21. TVE joins this action as Counterclaim Plaintiff in the interest of bringing all necessary and desirable parties before the Court, and aligns itself as a Counterclaim Plaintiff to join in and signify its acquiescence in the prayer for relief of TVA.

## Grounds for Relief

22. Counterclaim Plaintiffs hereby incorporate and restate the allegations of the foregoing paragraphs 1 through 21.

23. Both BoA and Beale had constructive and actual knowledge of the Right of First Refusal at the time the Notice of the foreclosure sale was published. Well before the foreclosure sale on February 16, 2011, both BoA and Beale knew that TVA had the right to exercise the Right of Refusal at the foreclosure.

24. As of the date of the foreclosure sale, Beale and BoA were chargeable with knowledge of longstanding rulings of the Virginia Supreme Court holding (a) that a Right of First Refusal triggered by an offer is triggered by a foreclosure sale or auction, and (b) that a party obligated to honor a right of first refusal cannot avoid or defeat that obligation by offering or selling the property subject to the right together with other properties which are not subject to the Right of First Refusal.

25. BoA's response to TVA's efforts to gain assurance that BoA would honor the Right of First Refusal, was to refuse to do anything that would alert anyone bidding at the sale to the existence of the Right of First Refusal, and do precisely what the law forbade – attempt to defeat the right by bundling and selling the Main House Tract with property not affected by the Right of First Refusal.

26. The Right of First Refusal applied to the foreclosure sale.

27. In order to fulfill the obligations imposed by the Right of First Refusal at the foreclosure sale, Beale was obligated to separately solicit bids for the Main House Tract and, before accepting the highest bid by a bona fide third party, tender that bid to TVA. Beale had the power and discretion to offer the Main House Tract separately, and had an obligation to do so because it was necessary to avoid breach of the obligations

imposed by the Right of First Refusal.

28. On information and belief, BoA directed Beale to offer the BoA Collateral for sale as a single parcel. As substitute trustee under the BoA Deed of Trust, Beale had a fiduciary duty not to allow BoA's wishes or preferences to cause it to breach Beale's fiduciary obligations.

29. Beale, therefore, had the obligation under the circumstances to either (a) seek court determination whether Beale could auction the BoA Collateral as a combined whole notwithstanding the Right of First Refusal on only part of it, before complying with BoA's requests that it do so, or (b) auction the Main House Tract separately from the balance of the BoA Collateral, so as to be able to abide by the obligation to any holder of the Right of First Refusal by offering it the right to purchase the Main House Tract for the amount of the highest bid by a bona fide third party at the sale.

30. Beale did neither of these things, but, in accordance with BoA's wishes, offered the property only as a bundled parcel, and accepted an offer in the form of a credit bid for the whole from BoA. In doing so Beale violated its fiduciary obligations, and abused its discretion.

31. On information and belief, the fair market value of the BoA Collateral was and is substantially less than the amount that was owed to BoA. BoA's actions, including directing or acquiescing in the sale of the Collateral as a whole, credit bidding the properties at a price in excess of their fair market value, and subsequently attempting to force relinquishment of the Right of First Refusal, were all done as part of a calculated plan to avoid the consequences of its underwriting decisions in 2007 to increase its exposure and release collateral notwithstanding that a major portion of the remaining collateral was subject to the Right of First Refusal: that is, in order to

eliminate, by any means necessary, the possibility of exercise of the Right of First Refusal in the event of foreclosure.

32. Defendant QP, as an affiliate of BoA and instrumentality of BoA's scheme to avoid the obligation to honor the Right of First Refusal, is charged with BoA's knowledge and actions throughout, and is equitably estopped from claiming any right to retain title or convey the Main House Tract without honoring the Right of First Refusal.

33. Defendant QP has advised Plaintiffs it is actively marketing the BoA Collateral, specifically including the Main House Tract, and Plaintiffs have legitimate grounds for concern that unless prevented from doing so by the court, BoA and QP will sell the Main House Tract to further remove it from Plaintiffs', and the court's, reach.

34. Beale's abuse of discretion and breach of its duties, render the conveyance of the BoA Collateral to QP following the foreclosure sale February 16, 2011, void as to conveyance of the Main House Tract.

35. Because of BoA's role and actions in the attempt to defeat the Right of First Refusal, it would be inequitable to allow BoA to retain, through its affiliate QP, ownership of the Main House Tract.

36. Any alleged hardship or prejudice to BoA or QP resulting from granting the relief sought herein and enforcing the Right of First Refusal, is solely the foreseeable result of BoA's own underwriting decisions and tactics in handling the foreclosure sale. If the relief requested herein is granted, BoA will end up with exactly what it bargained for when it refinanced the Fleet loan, and will be deprived only of the fruits of its attempts to steamroll holders of the Right of First Refusal.

37. It would be inequitable to deny TVA the benefit of the Right of First Refusal, yet continue to subject TVA to the substantial burdens imposed by the

easements across the Surrounding Land in favor of the Main House Tract and its owners – the very burdens the Right of First Refusal was intended to allow TVA to remove by exercising the Right of First Refusal – just to help BoA avoid the risks it knowingly undertook.

38. TVA has no adequate remedy at law to redress the Defendants' denial of and interference with TVA's right to exercise the Right of First Refusal, or for Beale's conveyance of the Main House Tract to QP at BoA's direction in violation of the Right of First Refusal.

## Prayer for Relief

39. Counterclaim Plaintiffs incorporate the allegations of paragraphs 1 through 38 above.

40. Based on the foregoing, Counterclaim Plaintiffs respectfully pray that this Court

(a) decree that Beale's conveyance of the Main House Tract to QP is void, and set it aside, and

(b) enjoin sale of the Main House Tract pending the outcome of this proceeding;

(c) order Beale to convey the Main House Tract to TVA upon tender by TVA to BoA/QP of such amount as the court concludes would be consistent with a bona fide offer by a bona fide third party to purchase the Main House Tract, based either on the actual bids of bona fide third parties at the sale February 16, 2011, or on such other basis as the court deems appropriate and just, or, in the alternative,

(d) enjoin QP and BoA from offering, contracting to sell, selling or conveying, the Main House Tract, alone or as part of a larger tract, except with leave of

court on such terms as the court may decree to protect Plaintiffs' rights, including, but not limited to (i) requiring that the Main House Tract be offered as a separate parcel, (ii) requiring disclosure in all offering and marketing materials that the Main House Tract is subject to a right of first refusal, (iii) requiring any offer or acceptance on QP's part to be expressly contingent upon Counterclaim Plaintiffs not exercising the Right of First Refusal, (iv) requiring QP/BoA to comply with the obligations of the Right of First Refusal, (v) prohibiting any solicitation or entertainment of any offer other than a bona fide offer from a bona fide third party, and (vi) prohibiting any conveyance or transfer to any party other than Counterclaim Plaintiffs, or a bona fide third party with respect to whose offer Counterclaim Plaintiffs have elected not to exercise the Right of First Refusal.

(e) enjoin QP and BoA from taking any other actions with respect to the Main House Tract which are designed to impede, hinder or impair, or which will have the necessary effect of impeding, hindering or impairing, the ability of Counterclaim Plaintiffs to exercise the Right of First Refusal, or the ability of the court to award effective relief, and

(f) award such other and further relief, including Counterclaim Plaintiffs' attorneys fees and costs incurred herein, as equity shall deem meet and the Court shall deem appropriate and necessary to give complete relief to Plaintiffs.

TRUMP VIRGINIA ACQUISITIONS LLC  
TRUMP VINEYARD ESTATES LLC  
By Counsel

/s/ David D. Hopper_____
David D. Hopper, Esquire (VSB # 30038)
Allan M. Heyward, Esquire (VSB #18839)
Cook, Heyward, Lee, Hopper & Feehan, P.C.
4551 Cox Road, Suite 210
P.O. Box 3059
Glen Allen, Virginia 23058-3059
Telephone: (804) 747-4500
Facsimile:  (804) 762-9608
e-mail: ddhopper@chlhf.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Raighne C. Delaney, Esquire
> rdelaney@beankinney.com
> Bean, Kinney & Korman, P.C.
> 2300 Wilson Boulevard, Seventh Floor
> Arlington, VA  22201

/s/ David D. Hopper_____
David D. Hopper, Esquire (VSB #30038)
Allan M. Heyward, Esquire (VSB #18839)
Cook, Heyward, Lee, Hopper & Feehan, P.C.
4551 Cox Road, Suite 210
P.O. Box 3059
Glen Allen, Virginia 23058-3059
Telephone: (804) 747-4500
Facsimile:  (804) 762-9608
e-mail: ddhopper@chlhf.com