IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

| | |
|---|---|
| QUALITY PROPERTIES ASSET MANAGEMENT COMPANY | ) ) ) |
| Plaintiff | ) ) |
| v. | ) CA: 3:11-cv-00053-NKM ) |
| TRUMP VIRGINIA ACQUISITIONS, LLC, *et. al.* | ) ) ) |
| Defendants. | ) ) |
| TRUMP VIRGINIA ACQUISITIONS, LLC, *et. al.* | ) ) ) |
| Counter-Plaintiffs | ) ) |
| v. | ) ) |
| QUALITY PROPERTIES ASSET MANAGEMENT COMPANY, *et. als.* | ) ) ) |
| Counter-Defendants. | ) ) |

**<u>REPLY BRIEF IN SUPPORT OF SUBSTITUTE TRUSTEE'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C) AND BRIEF IN OPPOSITION TO DEFENDANTS/COUNTER-PLAINTIFFS' CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

I.      Introduction................................................................................ 3

II.     Facts........................................................................................ 5

III.    Argument.................................................................................. 7

        A.      <u>Cities Serv. Oil. Co.</u> is inapplicable to the present case................ 8

        B.      The Right of First Refusal is not applicable to the sale
                made by Beale pursuant to the Deed of Trust................................ 10

        C.      The Trump Entities did not possess a right of first
                refusal as of the date of the foreclosure sale............................... 14

        D.      The Right of First Refusal otherwise terminated upon
                completion of the foreclosure sale................................................. 18

        E.      Beale had no duty to offer the Main House Tract
                for sale separately.......................................................................... 19

IV.     Conclusion................................................................................. 21

Counter-Defendant Beale, Davidson, Etherington & Morris, P.C. ("Beale" or the "Substitute Trustee"), by counsel, submits this Reply Brief in support of the separate Motions for Judgment on the Pleadings filed by Beale [Doc 56] and by Plaintiff/Counter-Defendant Quality Properties Asset Management Company ("Quality Properties") and by Counter-Defendant Bank of America, N.A. ("Bank of America") [Doc 54] (collectively the Motions for Judgment on the Pleadings are referred to as the "Motion for Judgment") and in opposition to the Cross-Motion for Judgment on the Pleadings [Doc 69] (the "Cross-Motion for Judgment") filed by Defendants/Counter-Plaintiffs Trump Virginia Acquisitions, LLC ("Trump Acquisitions") and Trump Vineyard Estates, LLC ("Trump Vineyards")(collectively, the "Trump Entities"). Previously, Quality Properties, Bank of America, and the Substitute Trustee filed Memoranda in Support of the Motion for Judgment on the Pleadings Pursuant to Rule 12(c) [Doc Nos. 58, 61] (the "Opening Briefs") (the Memorandum filed by Bank of America and Qualities Properties is referred to in the singular as the "Opening Brief").

I.      **Introduction**

This case involves an after-the-fact attempt by the Trump Entities to interfere with and attempt to unwind a foreclosure sale yielding a credit bid of over $15 million under a claimed right of first refusal that the Trump Entities (i) did not have the right to exercise at the time of the sale and (ii) could not have exercised at the time of the sale even if they did have the right. At its core, this case involves a straightforward application of Virginia law to the clear and unambiguous terms of the Right of First Refusal the Trump Entities seek to enforce and the specific exception to the right for deeds of trust.

Acting under a deed of trust executed by Patricia Kluge for the benefit of Bank of America, the Substitute Trustee sold at public foreclosure auction a single parcel of property containing 97.98 acres, including a 23,000 square foot mansion in Albemarle County. The sale occurred February 16, 2011. Pursuant to a purported assignment of a right of first refusal to purchase the mansion and the immediately surrounding 9.904 acres (the "Main House Tract"), the Trump Entities contacted Bank of America prior to the foreclosure sale claiming the right to purchase not just the Main House Tract, but the entire "Property" – defined as being the entire 97.98 acre parcel being foreclosed. Complaint, Ex. 17 (hereinafter, Compl. Ex. __ or Compl. ¶ __). There is no dispute that the Trump Entities never requested that the Substitute Trustee sell the Main House Tract separately from the remainder of the property, and the Trump Entities make no allegation to that effect. After the fact, however, the Trump Entities have asserted their claimed Right of First Refusal continues to exist, and that they have the right to assert it against the Main House Tract. Compl. ¶ 30; Compl. Ex. 19. In fact, after the foreclosure sale, Donald J. Trump has publically claimed that Bank of America cannot expect to sell its property to anyone but him. Compl. ¶ 31; Compl. Ex. 20.

As this Brief will show, the Trump Entities' interpretation of the right of first refusal is tortured and self-serving, and their efforts to void the sale, unwind the sale, or otherwise obtain the Main House Tract by force of law are misguided. Simply put, the Right of First refusal was inapplicable to the foreclosure sale, and it was effectively terminated by the foreclosure sale – if not before. Moreover, the Trump Entities sat on their rights (if any), and took no affirmative action in advance of sale – other than bidding on the very property they contend the Substitute Trustee should not have sold.

4

## II.  Facts

The uncontroverted facts established by the pleadings have been set forth at length in the Opening Brief, and those facts are incorporated as if set forth fully herein. The most pertinent facts can be summarized as follows.

In 1984, John W. Kluge and Patricia Kluge conveyed several tracts of land in Albemarle County to JWK Properties, Inc. ("JWK"), including the Main House Tract (defined as the "Property" in the Quitclaim Deed attached as Exhibit 2 to the Complaint) [Doc 2] and the Burdened Land (as specifically defined in the Quitclaim Deed attached as Exhibit 2 to the Complaint) among others.  Compl. ¶ 16; Compl. Ex. 1; Amended Answer, Affirmative Defenses and Counterclaim [Doc 72] ¶ 6 (hereinafter, Answer ¶ __). On June 13, 1990, JWK executed a Quitclaim Deed conveying the Main House Tract to Patricia Kluge subject to a right of first refusal in favor of the Burdened Land.  Compl. ¶ 7; Compl. Ex. 2; Answer ¶ 7.  In pertinent part, the Quitclaim Deed provides as follows

> [Patricia Kluge] hereby COVENANTS and AGREES, that for so long as *she* is the owner of the [Main House Tract], *she* will not accept **an offer for the purchase** of all or any portion of the [Main House Tract] without first notifying the **then current owner of the Burdened Land** of such offer.   In such event, the then current owner of the Burdened Land shall have the right to purchase said property at the same price and upon the same terms and conditions as those offered by such bona fide third party ("Right of First Refusal").
>
> ...
>
> Notice shall be presumed to be delivered three days after notice is mailed by certified mail, postage prepaid, to the mailing address for the **then current owner of the Burdened Land** as shown in the records of the Real Estate Tax Assessor for Albemarle County, Virginia.
>
> ...

> This Right of First Refusal **shall not apply** to (i) any **conveyance** of the [Main House Tract] as **security** for any indebtedness of [Patricia] (the "Security Exception").

Compl. Ex. 2 (emphasis added). As of the date of the Quitclaim Deed, JWK owned all of the Burdened Land. Compl. ¶ 7; Answer ¶ 7. However, as a result of several deeds, as of July 8, 2005, the Burdened Land was owned by Patricia Kluge, the Kluge Estate Winery, and Patricia M. Kluge, as Trustee of the John W. Kluge, Jr. Trust (the "Trust") Compl. ¶ 20.

On November 6, 2007, Patricia Kluge executed a Deed of Trust (the "Deed of Trust") by which she conveyed her interest in certain property, including the Main House Tract (together referred to as "TMP 102-35"), to J. Page Williams (the "Trustee") in trust to secure repayment of her indebtedness to Bank of America. Compl. ¶ 23; Compl. Ex. 15. Patricia Kluge subsequently defaulted in her obligations to repay the indebtedness, and Bank of America installed Beale as substitute trustee under the Deed of Trust. Compl. ¶ 24; Answer ¶ 11. In January 2011, Beale published a notice of sale indicating that it would conduct a foreclosure sale of TMP 102-35 on February 16, 2011. Id.

As of February 16, 2011, legal title to the Burdened Land was held by Beale (subject to the equitable rights of Patricia Kluge), Grand Cru Properties, LLC ("Grand Cru"), and the Trust. Compl. ¶ 21; Compl. Ex. 12; Answer ¶ 9. As of January 26, 2011, however, Trump Acquisitions only held an option to purchase the portion of the Burdened Land owned by the Trust. Compl. ¶ 25; Compl. Ex. 16; Answer ¶ 12. Pursuant to an agreement (containing, among other things, a purported Assignment of the Trust's Right of First Refusal) with the Trust, Trump Acquisitions asserted that it held the Right of First Refusal on the Main House Tract. Compl. ¶¶ 25, 26; Compl. Exs. 16, 17;

Answer ¶¶ 12, 13.  Trump Acquisitions subsequently exercised its option to purchase the Trust's portion of the Burdened Land, and the property was conveyed by deed to Trump Acquisitions on March 10, 2011.  Compl. Ex. 14.  Trump Vineyards then purchased then portion of the Burdened Land from Grand Cru on May 9, 2011.  Compl. Ex. 13.

On February 16, 2011, The Substitute Trustee sold the entire TMP 102-35 as conveyed by the Deed of Trust to Bank of America for its credit bid of $15.26 million, which was the highest and best bid received.  Compl. ¶ 27, Compl. Ex. 18.  The Trump Entities bid at the sale, stopping at $3.6 Million.  Id.  Bank of America subsequently assigned its rights to purchase TMP 102-35 to Quality Properties Asset Management Company ("Quality Properties").  Id.  The Trustee's Deed conveying TMP 102-35 to Quality Properties was recorded on March 9, 2011.  Compl.  Ex. 18.

The Trump Entities sought no injunctive or other judicial relief prior to the sale. They filed no notice of *lis pendens*.  Now disgruntled that they were outbid at the foreclosure sale, the Trump Entities seek to unwind the sale through both a misapplication of the law and of the terms of the Right of First Refusal itself.

### III.    Analysis

The issue before this Court is whether, under the circumstances of this case, the Trump Entities' claimed right of first refusal can be used to unwind an otherwise-valid foreclosure sale or to fashion some other form of relief whereby Quality Properties can be required to sell the Main House Tract to the Trump Entities by force of law.  The issue has been raised in the form of cross-motions for judgment on the pleadings.  Neither party seems to genuinely dispute that the operative facts have been established through the pleadings.  Therefore, this Court can decide the issue as a matter of law.  As will be

shown, the Court should grant the Motion for Judgment filed by Bank of America, Quality Properties and the Substitute Trustee (i) because rights of first refusal do not apply to foreclosure sales; (ii) because the Right of First Refusal contained a specific exception for conveyances for security; (iii) because the Right of First Refusal terminated prior to the assignment of the right to the Trump Entities; (iv) because the Trump Entities did not have the right to exercise the Right of First Refusal as of the date of the foreclosure sale; and (v) because the Right of First Refusal was terminated upon the completion of the foreclosure sale.

### A.  *Cities Serv. Oil Co.* **is inapplicable to the present case.**

As an initial matter, the Trump Entities argue that Virginia law provides that rights of first refusal apply to foreclosure sales as a matter of law.  Cities Serv. Oil Co. v. Estes, 208 Va. 44, 155 S.E.2d 59 (1967)**,** however, does <u>not</u> hold that a right of first refusal is applicable to a <u>foreclosure</u> sale.  Instead, Cities Serv. Oil Co. held only that a right of first refusal was applicable to a <u>judicial</u> sale.  Id. at 50, 155 S.E.2d at 64 ("[W]e hold that the right given to Cities Service under . . . the lease does apply to the <u>judicial sale</u> in this case.")(emphasis added).  Notwithstanding the differences between a judicial sale and a non-judicial foreclosure sale, Cities Serv. Oil Co. is very different on its facts. Cities Serv. Oil Co. involved the *voluntary* sale by the guardian of the party restricted by a right of first refusal.  Id. at 45, 155 S.E.2d at 61.  Thus, the question of whether a right of first refusal applies to an involuntary foreclosure sale initiated against the will of the

8

party restricted by the right of first refusal (as is the case here) is a very different issue.[1]

In fact, a majority of jurisdictions that have considered the question have held that a right of first refusal does not apply to a foreclosure sale. See Henderson v. Millis, 373 N.W.2d 497 (Iowa 1985); Blankman v. Great Western Food Distributors, Inc., 293 N.Y.S.2d 368 (1968); Draper v. Gochman, 400 S.W.2d 545 (Tex 1966); In re Rigby's Estate, 62 Wyo. 401, 167 P.2d 964 (1946); Nu-Way Service Stations v. Vandenberg Bros. Oil Co., 283 Mich. 551, 278 N.W. 683 (1938).[2]

In Cities Serv. Oil Co., the Court faced the issue of whether the right of first refusal provision contained in a lease by O. H. and Elsie Mull applied to a public judicial sale of the property ordered at the request of the guardian of O. H. Mull for the benefit of his estate. 208 Va. at 45, 155 S.E.2d at 60-61. The purchaser of the property subject to the right of first refusal argued that the right did not apply and cited the cases of In re Rigby's Estate and Draper v. Gochman in support of his position. The Court, however, distinguished both cases. The Court distinguished Rigby's Estate on the basis that "the court viewed the administrator as being neither an agent of the heirs nor as deriving any power from them [and] concluded that the judicial sale was not a voluntary sale." Cities

---

[1] The Trump Entities have also cited the decision in Fairfax County Redevelopment and Housing Authority v. Riekse as further authority for the assertion that rights of first refusal apply to foreclosure sales as a matter of law. 281 Va. 441, 707 S.E.2d 826 (2011). The decision features no such holding. On appeal, Fairfax did argue that the trial court erred in holding that its sole remedy to enforce its right of first refusal was to bring an action for ejectment against the purchaser at a foreclosure sale; however, the Court's only decision on this point of appeal was to hold: "Fairfax has sought specific performance by the Kapanis, who no longer hold title to the parcel. Accordingly, the circuit court's determination that it could not order the Kapanis to perform because it was impossible for them to offer the parcel to Fairfax was correct." Id. at 447, 707 S.E.2d at 829. In fact, the Court was careful not to reach the issue of whether Fairfax's appropriate remedy was ejectment of the foreclosure purchaser. Further, the Court did not consider (as the argument was not raised) whether a right of first refusal is applicable to a foreclosure sale. The Substitute Trustee notes that this Court discussed both Rieske and Cities Service in its November 10, 2011 memorandum opinion in this case. However, the Substitute Trustee was not a party to this case at that time, and it believes that upon re-examination of those cases, the Court will concur with the Substitute Trustee's analysis.

[2] For a cumulative supplement of cases deciding the issue, see 17 ALR 3d 962.

9

Serv. Oil Co., 208 Va. at 48-49, 155 S.E.2d at 63 (emphasis added). The Court distinguished Draper on the basis that Draper involved an "involuntary sale by foreclosure" which was "made whether or not the owner desire[d] to sell." Cities Serv. Oil Co., 208 Va. at 49, 155 S.E.2d at 63. The Court refused to follow either case for the very same reason Cities Serv. Oil Co. is inapplicable to the present case: this case involves an involuntary foreclosure sale – not a voluntary judicial sale done at the request of the guardian of the person restricted by the right of first refusal. Thus, by the Cities Serv. Oil Co. Court's own reasoning, its decision is inapplicable here. As a result, this Court should apply the majority rule and hold that the Right of First Refusal is not applicable to foreclosure sales.

Even if this Court were persuaded that the Cities Serv. Oil Co. holding was broad enough to encompass involuntary foreclosure sales, the decision is distinguishable on the additional ground that the right of first refusal in Cities Serv. Oil Co. did not involve language similar to the Security Exception at issue here. In fact, other than the temporal limitations placed on the right in Cities Serv. Oil Co., that case did not involve any exception. Therefore, Cities Serv. Oil Co. cannot be applied without first determining the nature and extent of Security Exception.

   B.    **The Right of First Refusal is not applicable to the sale made by Beale pursuant to the Deed of Trust.**

Even if a right of first refusal applies to a foreclosure sale as a general matter, the Security Exception contained in the Quitclaim Deed renders the Right of First Refusal inapplicable here. The provisions of the Quitclaim Deed must be construed according to the "sense and meaning of the terms which the parties have used." BP Products North America, Inc. v. Stanley, 669 F.3d 184, 190 (CA4 2012)(citing Bawden v. American

10

Cent. Ins. Co., 153 Va. 416, 150 S.E. 257, 260 (1929)). The Trump Entities essentially complain that the foreclosure sale by the Substitute Trustee of the entire TMP 102-35 without separately offering the Main House Tract for sale violated the Right of First Refusal. Because Beale sold TMP 102-35 pursuant to the rights conveyed by Patricia Kluge through the Deed of Trust, which were specifically excepted from the application of the Right of First Refusal, this conclusion cannot stand against the plain and ordinary meaning of the provisions of the Quitclaim Deed.

It is well-established that the conveyance of property via a deed of trust in Virginia is a conveyance of legal title to the property. The United States District Court for the Eastern District observed that a deed of trust conveys "legal title to the property to the trustee." Abdelhaq v. Pflug, 82 B.R. 807, 809 (E.D. Va. 1988). This observation of Virginia law has been adopted without exception by the Fourth Circuit. *See, e.g.,* Old Stone Bank v. Tycon I Bldg. Ltd. Ptnshp., 946 F.2d 271, 275 (CA4 1991). The Virginia Supreme Court further observed that the trustee under a deed of trust "occupies the technical position of the seller at the sale [made pursuant to the deed of trust]." Yaffe v. Heritage Savings & Loan Ass'n, 235 Va. 577, 583, 369 S.E.2d 404, 407 (1988). Further, the grantor under a deed of trust retains only "the equitable right to repay the indebtedness secured by the trust and obtain the property upon full payment." Pflug, 82 B.R. at 809. According to Black's Law Dictionary, a conveyance is "[t]he voluntary transfer of a right or of property." Black's Law Dictionary, 283 (Abridged 8th ed. 2005). The clear and unambiguous Security Exception contained in the Quitclaim Deed must be examined with reference to the ordinary meaning of the terms used therein as construed under Virginia law. As such, the Right of First Refusal by its own terms did not apply to

Case 3:11-cv-00053-NKM-BWC   Document 74   Filed 04/10/12   Page 11 of 22   Pageid#: 665

Patricia Kluge's conveyance of <u>legal</u> <u>title</u> of the Main House Tract to the trustee under the Deed of Trust.

In their Brief in Response and Support [Doc 70] (hereinafter, "Resp. Br. [page] __"), the Trump Entities assert that this argument "distorts the plain meaning of the [Right of First Refusal's] language." Resp. Br. 6. The Trump Entities, however, spend three pages of their Brief in Response and Support advancing the argument – supported only by an online legal dictionary – that the conveyance of the Main House Tract in the Deed of Trust was not a conveyance of ownership. The conclusion of the Trump Entities' argument is that the Right of First Refusal excepts "<u>only</u> the <u>security</u> conveyance, not the ultimate conveyance of <u>ownership</u>." Resp. Br. 8 (emphasis in original).

This argument fails, not only for lack of genuine support, but because it is directly contrary to Virginia law as set forth in <u>Pflug</u>, <u>Yaffe</u>, and Virginia Code §§ 55-58, <u>et.</u> <u>seq</u>. In fact, the "security conveyance" <u>was</u> "a conveyance of ownership." By its own terms, the Right of First Refusal applied only while Patricia Kluge was the owner of the Main House Tract and only where Patricia Kluge was the party accepting an offer of purchase of the Main House Tract. The Deed of Trust divested Patricia Kluge of legal title to the Main House Tract, and she retained only her equitable rights in the property. Additionally, Patricia Kluge had no right to accept or reject any offer of purchase of the Main House Tract. Instead, The Substitute Trustee occupied that position as seller pursuant to <u>Yaffe</u>.

Yet the Trump Entities continue by asserting that the "provision <u>expressly</u> excluding the conveyance of a security interest" was "<u>essential</u>" to "effectuate [the parties'] intent," Resp. Br. 8 (emphasis in original), as if this conclusion somehow

defeats the plain meaning of the Security Exception or the Right of First Refusal. The intent was to except the conveyance of legal title to secure the indebtedness of Patricia Kluge from the provisions of the Right of First Refusal.

The Right of First Refusal, by its own terms, only applies to the "offer for a purchase" of the Main House Tract. If the mortgage was indeed only a conveyance for security—as the Trump Entities assert—and not a conveyance of legal title (which it is), then the Right of First Refusal would not apply to the Deed of Trust at all. In this scenario, the Security Exception would be rendered wholly superfluous. However, as noted above, the conveyance of real property for security is a transfer of legal title in Virginia. Therefore, the Security Exception was added for this purpose: to ensure that the transfer of legal title via a deed of trust did not trigger the Right of First Refusal.

The Trump Entities are critical of this argument, however, because they assert that "no case holds that a person has [a] . . . right to mortgage property that cannot be impinged by a right of first refusal." Resp. Br. 8 (emphasis in original). However, this is not what the Substitute Trustee contends at all. To the contrary, the Substitute Trustee argues that, were there no Security Exception, the right of Patricia Kluge to grant the Deed of Trust would have been impinged by the Right of First Refusal because the Deed of Trust was effectively a conveyance of legal title under Virginia law. It is precisely this reason why the Security Exception was necessary, and it is precisely this reason why the Right of First Refusal did not apply to Beale's foreclosure sale pursuant to the Deed of Trust.

Because the Substitute Trustee, as the holder of legal title to the Main House Tract and the remainder of TMP 102-35, sold TMP 102-35 pursuant to Patricia Kluge's

Case 3:11-cv-00053-NKM-BWC   Document 74   Filed 04/10/12   Page 13 of 22   Pageid#: 667

valid conveyance of title through the Deed of Trust, and because this sale did <u>not</u> trigger the Right of First Refusal (which is now extinguished), the Substitute Trustee is entitled to judgment on the pleadings as to the Trump Entities' counterclaims against it as a matter of law.

The Trump Entities appear to argue that, because the Security Exception was framed as an exception rather than an event destroying the Right of First Refusal, the Security Exception must be viewed as skating through foreclosure to the <u>subsequent transfer</u> by the trustee pursuant to the Deed of Trust. However, the Security Exception, read to give it proper utility, does <u>not</u> destroy the Right of First Refusal; it merely makes it inapplicable to the transfer of legal title via a security instrument (and necessarily the subsequent transfer pursuant to the Deed of Trust). The Right of First Refusal would still have still applied had Patricia Kluge not defaulted and paid off the debt secured by the deed of trust or exercised her right of redemption and repaid the indebtedness prior to foreclosure.[3]

### C. The Trump Entities did not possess a right of first refusal as of the date of the foreclosure sale.

Notwithstanding the fact that the Security Exception excepted the foreclosure sale from the reach of the Right of First Refusal, the Trump Entities did not possess a right of first refusal that they could have exercise before, during or after the sale. This is true for two reasons. First, the subdivision and re-subdivision of the Burdened Land terminated the Right of First Refusal. Second, the Trump Entities did not own any of the Burdened Land as of the date of the foreclosure.

---

[3] However, the Right of First Refusal was extinguished for other reasons, such as the subdivision of the property, as explained later herein.

As to termination of the Right of First Refusal by the subdivision and resubdivision of the Burdened Land, Beale relies primarily on the arguments asserted in the Opening Brief (at 19-21) and the case of <u>Levy v. Blue Ridge Construction Co., Inc.</u>, 345 N.Y.S.2d 314, aff'd 44 A.D.2d 778, 355 N.Y.S.2d 567 (1974). The question of whether a right of first refusal burdening a parcel of land survives the subdivision of that parcel into multiple tracts conveyed to multiple owners is an issue of first impression in Virginia. The factual background of the <u>Levy</u> decision, however, is closely analogous to the present case.

In <u>Levy</u>, plaintiff acquired a 4.7-acre tract of land from her husband subject to a right of first refusal benefitting the surrounding 100-acre tract. <u>Id</u>. at 315. The defendants acquired the 100-acre by the same deed creating the right of first refusal. <u>Id</u>. The defendants, however, subsequently subdivided the 100-acre tract into smaller parcels. <u>Id</u>. at 315-16. The plaintiff argued that this subdivision terminated the right of first refusal. <u>Id</u>. at 315. Observing that the subsequent subdivision of the 100-acre tract left three separate owners each claiming the same right of first refusal, the Court held that the right terminated upon the subdivision.

The circumstances of the present case warrant adoption of <u>Levy</u> to hold that the Right of First Refusal terminated upon the subdivision of the land long before the foreclosure sale. As a result of the various subdivisions set forth at length in the Complaint and the Opening Brief, the Burdened Land was owned by Beale (subject to the equitable rights of Patricia Kluge), Grand Cru, and the Trust at the time of the foreclosure sale. The subsequent subdivision of land creating multiple tracts was accomplished by JWK, the grantor and original beneficiary of the right of first refusal. These

considerations were critical to the decision in <u>Levy</u>, and the Trump Entities identify no reason why <u>Levy</u> should be distinguished from this case.

Instead, the Trump Entities posit that the Right of First Refusal may have been created to promote reunification of the Main House Tract with the surrounding acreage; therefore, they reason, because the Trump Entities eventually purchased the majority of the Burdened Land (<u>after</u> the foreclosure sale, nonetheless), the hypothetical "purpose" of the Right of First Refusal would be served by the result they seek. However, without considering the Trump Entities' subsequent business decisions, the subdivision of the Burdened Land accomplished anything but unification of the total acreage. In fact, carried to its logical conclusion, the rule advanced by the Trump Entities would require application of the Right of First Refusal to every separate owner of any portion of the Burdened Tract, even if the Burdened Tract had been subdivided into 100 separate parcels. Thus, not only do the legally operative facts justify application of <u>Levy</u> to the present case, but practical considerations implore it.

In the face of this conclusion, however, the Trump Entities argue that, because the Right of First Refusal was freely assignable, the right survived the subdivision of the Burdened Land despite the decision in <u>Levy</u>. In support of this position, the Trump Entities cite only <u>Johnson v. Ferris</u>, 58 Va. Cir. 7 (Fairfax County 2001). The Court in <u>Ferris</u> noted, however, that there are several exceptions to the rule that contracts are freely assignable. <u>Id</u>. at 12. As a result, reference to the general rule does not end the analysis. In fact, the Virginia Supreme Court has observed that, when determining whether a contract is assignable, "[r]egard should be had to the intention of the parties and such intention should be given effect." <u>McGuire v. Brown</u>, 114 Va. 235, 241, 76 S.E.

295, 297 (1912). As discussed above, rather than advancing the intention of the parties (as the Trump Entities described that intention), free assignability of the Right of First Refusal to numerous separate landowners would contradict that intention. Further, allowing the Trump Entities to exercise the Right of First Refusal at a time when it owned absolutely no portion of the Burdened Land would destroy that intention. As a result, this Court should apply the rule from Levy to the facts of this case and hold that the Right of First Refusal was terminated upon the subdivision of the Burdened Land.

Even assuming that the subdivision of the Burdened Land did not terminate the Right of First Refusal, this Court should deny the Trump Entities' Cross-Motion for Judgment (and grant the Motion for Judgment) for an additional reason: the Trump Entities had no power to exercise the Right of First Refusal as of the date of the foreclosure sale because the purported assignment of that right to the Trump Entities was ineffective. Based on the specific language used in the Quitclaim Deed, the Right of First Refusal at issue was not freely assignable.

The Quitclaim Deed refers to the rights of parties other than Patricia Kluge in only four places. In three places, the Quitclaim Deed refers to the maintenance of certain appurtenances being delegated to Patricia Kluge and her successors in title or to JWK and its successors in title. Then, in the language creating the Right of First Refusal, the right is reserved specifically to the "then current owner of the Burdened Land." The Trump Entities correctly assert that this language "confirms that the parties intended for ownership of the [Right of First Refusal] to pass to any new Burdened Land owner." Resp. Br. 18-19 (emphasis added). As the Trump Entities suggest, the phrase "then current" on the one hand allows for the Right of First Refusal to be transferred with title

to the Burdened Land.  On the other hand, the phrase <u>also</u> limits the transferability of the right to the "then current" owner of title to the Burdened Land.  It does not apply to past or future owners of the Burdened Land.  Again, as discussed above, allowing the Trump Entities to exercise the Right of First Refusal as assignee but not owner of any portion of the Burdened Land would not only contravene the express language of the Quitclaim Deed but would also destroy the intention of the parties to the deed.  As a result, the purported assignment of the Right of First Refusal to the Trump Entities was not effective, and the Trump Entities therefore had no right to exercise the Right of First Refusal at the time of the foreclosure sale.[4]

      **D.**      **The Right of First Refusal otherwise terminated upon completion of the foreclosure sale.**

As discussed above, the Trump Entities could not have exercised the Right of First Refusal as of the date of the foreclosure sale because the Trump Entities did not meet a central prerequisite of the right to exercise the right:  ownership of the Burdened Land.  The Trump Entities did not own any portion of the Burdened Land, in fact, until March 10, 2011, when Trump Acquisitions exercised its option to purchase the portion then owned by the Trust.  By this point, the foreclosure sale was complete and Beale had transferred the TMP 102-35 to Quality Properties.  As a result, as of the date when the Trump Entities first acquired the right to exercise the Right of First Refusal, the right had terminated as Patricia Kluge was no longer the owner of the Main House Tract.

---

[4] At least in the context of the attempted enforcement of a restrictive covenant by a party with no interest in the land benefitted by the covenant, this result is affirmed by various courts across the country.  <u>See Lillard v. Jet Homes, Inc.</u>, 129 So. 2d 109 (La. App. 1961); <u>Stegall v. Housing Authority of Charlotte</u>, 278 N.C. 95, 178 S.E.2d 824 (1971); <u>Farber v. Bay View Terrace Homeowners Ass'n</u>, 46 Cal. Rptr. 3d 425 (Cal. App. 4th Dist. 2006); <u>Palm Point Property Owners' Ass'n of Charlotte County v. Pisarski</u>, 608 So. 2d 537 (Fla. Dist. Ct. App. 2d Dist. 1992), <u>decision approved</u>, 626 So. 2d 195 (Fla. 1993).  In each of those decisions, the courts held that a covenant cannot be enforced by a party that does not own the land benefitting from the covenant.

The Trump Entities argue, however, that this conclusion results in Patricia Kluge's having unilaterally defeated the Right of First Refusal. This is inaccurate. The event that "defeated" the Right of First Refusal was the subsequent sale by Beale pursuant to the Deed of Trust granted by Patricia Kluge pursuant to the Security Exception expressly granted her by JWK. The transfer was not unilateral, and it was, in fact, contemplated in the Quitclaim Deed and excepted from the reach of the Right of First Refusal.

> **E.      Beale had no duty to offer the Main House Tract for sale
> separately and to do so would have violated Virginia law.**

Despite the fact that neither the conveyance of legal title to the Property to the Trustee via the Deed of Trust nor the subsequent lawful sale of TMP 102-35 triggered application of the "Right of First Refusal," and despite the fact that the Trump Entities had no ability to exercise the Right of First Refusal as of the date of the foreclosure sale, the Trump Entities continue to argue that the Substitute Trustee violated its duties by failing to offer the Main House Tract separately at the foreclosure sale. This argument finds no support. As set forth in the Opening Brief and herein, a trustee under a deed of trust holds legal title to the subject property in trust for the beneficiary and for the grantor subject to the grantor's equitable right to repay the indebtedness secured by the trust. At most, the trustee owes a duty to bring the property under his trust to sale in the best possible condition. Hudson v. Barham, 101 Va. 63, 66-67, 43 S.E. 189, 190 (1903). This is read in conjunction with the well established rule that the "[t]he powers and duties of the Trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts." Warner v. Clementson, 254 Va. 356, 361, 492 S.E.2d 655, 657 (1997).

In this case, because the Substitute Trustee was not selling TMP 102-35 subject to the Right of First Refusal, it was not required to seek aid and guidance from the courts prior to sale. To do so would have violated the dictate from <u>Barham</u> that aid should not be sought where it is not necessary, especially when (i) the Trump Entities never asked the Substitute Trustee to sell the Main House Tract separately, (ii) the Trump Entities attended the sale and bid on <u>all of the property</u> the Substitute Trustee was selling, and (iii) "the costs of a lawsuit ought not be added to the ordinary cost of executing the trust." <u>Id</u>. at 67-68, 43 S.E. at 190.

The Trump Entities, however, argue <u>now</u> that the Substitute Trustee should have offered the Main House Tract separately at the sale.[5] This would have greatly expanded the duties of Beale as set forth in <u>Barham</u>. In fact, as to the Substitute Trustee, the Trump Entities were strangers to whom the Substitute Trustee owed no duty whatsoever. The Substitute Trustee's only justification for splitting TMP 102-35 could have been an assessment that doing so was necessary "to bring the estate to hammer under every possible advantage." <u>Id</u>. at 67, 43 S.E. at 190. Here, the Substitute Trustee determined that selling TMP 102-35 as one parcel brought the greatest advantage to Bank of America and Patricia Kluge, and the Trump Entities have not pleaded any facts to raise doubts regarding that conclusion. For the various reasons set forth in the Opening Brief, this position was justified. In fact, to sell TMP 102-35 in smaller divisions, as the Trump Entities suggests the Substitute Trustee should have done, would have violated Virginia Code § 15.2-2254 (preventing unauthorized subdivision of land) and Albemarle County

---

[5] The Trump Entities attempt to be both tall and short. On the one hand, they contend now that the Substitute Trustee should have sold the Main House Tract separately. However, Jason Greenblatt, their attorney, in his February 2, 2011 letter to Bank of America, claimed that the "ROFR" applied to the entire "Property," being defined as the entire parcel being foreclosed, not just the Main House Tract. (Complaint, Ex. 17).

Code, Ch. 14, § 14-404(A) (preventing land-locking), among others. Simply, the Substitute Trustee had no ability – much less a duty – to sell the Main House Tract as a separate parcel, and the Trump Entities cannot argue, as they have, that the Substitute Trustee's failure to sell TMP 102-35 somehow violates Virginia law and entitles them to the relief requested in the Counter-Claim. Resp. Br. 23-24.

**IV.**     **Conclusion**

For all of the reasons set forth herein, and for the reasons set forth in its Motion for Judgment on the Pleadings, the Substitute Trustee's Motion for Judgment on the Pleadings should be granted, and the Trump Entities' Counterclaim against the Substitute Trustee should be dismissed with prejudice. Further, the Trump Entities' Motion for Judgment on the Pleadings should be denied.

**DATED:  April 10, 2012**          **BEALE DAVIDSON ETHERINGTON & MORRIS, P.C., SUBSTITUTE TRUSTEE**

                                                      /s/ Paul M. Black
                                                      **SPILMAN THOMAS & BATTLE, PLLC**
                                                      Paul M. Black (VSB #24861)
                                                      Travis A. Knobbe (VSB #77914)
                                                      310 First Street, Suite 1100
                                                      Post Office Box 90
                                                      Roanoke, Virginia 24002-0090
                                                      pblack@spilmanlaw.com
                                                      tknobbe@spilmanlaw.com
                                                      (540) 512-1804
                                                      (540) 342-4480 (fax)
                                                      *Counsel for the Substitute Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2012, the foregoing document was served electronically or mailed by U.S. Mail, postage prepaid, addressed to the following:

Stephen Novack
John F. Shonkwiler
John Haarlow, Jr.
Novack and Macey LLP
100 North Riverside Plaza
Chicago, IL 60606
*Attorneys for Trump Virginia Acquisitions, LLC*
*and Trump Vineyard Estates, LLC*

Rhonda Quagliana
St. John, Bowling, Lawrence, & Quagliana, LLP
416 Park Street
Charlottesville, VA 22902-4738
*Co-Counsel for Trump Virginia Acquisitions, LLC*
*and Trump Vineyard, Estates, LLC*

Raighne C. Delaney
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, Seventh Floor
Arlington, Virginia 22201
*Counsel for Quality Properties Asset Management Company,*
*Plaintiff and Counterclaim Defendant,*
*and Bank of America, N.A., Counterclaim Defendant*

/s/      Paul M. Black

3554648